REGAL MOTORS, INC., Plaintiff-Appellant, v. FIAT MOTORS OF NORTH AMERICA, INC., Defendant-Appellee.

First District (1st Division)   No. 84—320

Opinion filed May 13, 1985.

Gary L. Blank, Ltd., and Larry D. Drury, Ltd., both of Chicago, for appellant.

David N. McBride, Larry R. Goldstein, and Marianne E. Guerrini, all of Ross & Hardies, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Regal Motors, Inc. (Regal), originally filed this action against defendant, Fiat Motors of North America, Inc. (FMNA), in 1980 and has amended its complaint on several occasions. The fourth amended class action complaint alleged in relevant part that FMNA had violated section 3(2) of the Illinois Antitrust Act (Ill. Rev. Stat. 1981, ch. 38, par. 60—3(2)) by engaging in "price fixing and/or price discrimination." Plaintiff sought damages and injunctive relief on behalf of the class of all Fiat dealers nationwide. On October 29, 1982, the trial court granted FMNA's motion to dismiss that portion of Regal's complaint containing allegations concerning price fixing and price discrimination. Regal separately appealed that decision to this court. Pursuant to leave of the trial court, Regal subsequently filed an amendment to the fourth complaint adding count II coupled with a request for a temporary restraining order or a preliminary injunction. Count II was based on a letter FMNA sent Regal and all other Fiat dealers in the United States which, in part, terminated their dealer agreements with FMNA. In count II, Regal charged FMNA with violating the Illinois Antitrust Act and with breach of contract. On February 10, 1983, the trial court entered an order dismissing count II and denying Regal's motion to reinstate certain class action allegations contained in the third amended complaint. Regal again filed an appeal from this order which was subsequently consolidated with its prior appeal. In a Rule 23 order, we dismissed both appeals for lack of jurisdiction because both orders lacked sufficient indicia of finality. On remand, Regal elected to stand on its previously dismissed pleadings and requested that the trial court enter an order making the previous dismissals "with prejudice and without leave to amend." The trial court entered such an order, and Regal perfected an appeal to this court pursuant to Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)). Regal still has a separate individual cause of action pending in the trial court based on an alleged illegal tying arrangement. We affirm both dismissals.

We will first address those issues relating to the dismissal of Regal's price-fixing and price-discrimination claims. In its fourth amended complaint, Regal alleged that defendant illegally conspired with several Columbus, Ohio, corporations to sell certain Fiat automobiles to the alleged co-conspirator corporations "in mass volume" and at a price approximately $2,800 below the price paid by Regal to defendant for the same vehicles. The gravamen of plaintiff's complaint is that this agreement amounts to illegal price fixing or price discrimination in violation of section 3(2) of the Illinois Antitrust Act

(Ill. Rev. Stat. 1981, ch. 38, par. 60—3(2)). Accepting plaintiff's allegations as true, we do not believe the conduct complained of to be prohibited by our act.

■ Cases arising under parallel provisions of the Sherman Act (15 U.S.C. sec. 1 (1982)) recognize two types of price fixing. There is the horizontal variety, which encompasses agreements between competitors for the purpose or with the effect of fixing prices for goods or services. There is also vertical price fixing, which deals with agreements between a supplier and a customer which attempt to control resale price. (*Knuth v. Erie-Crawford Dairy Cooperative Association* (W.D. Pa. 1971), 326 F. Supp. 48, *modified on other grounds* (3d Cir. 1972), 463 F.2d 470, *cert. denied* (1973), 410 U.S. 913, 35 L. Ed. 2d 278, 93 S. Ct. 966.) Horizontal price fixing has been held to be a *per se* violation of our own act (Ill. Rev. Stat. 1975, ch. 38, par. 60—3(1)(a)). (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.) Whether or not the Illinois act also proscribes vertical-price-fixing agreements has been questioned in at least one decision of this court. (*People ex rel. Scott v. Convenient Food Mart, Inc.* (1974), 21 Ill. App. 3d 97, 104-05, 315 N.E.2d 124; see also Ill. Ann. Stat., ch. 38, par. 60, Bar Committee Comments-1967, at 452 (Smith-Hurd 1967) ("Section 3(1) does not reach vertical agreements, such as agreements between buyers and sellers fixing the price at which the buyer shall resell").) While we agree with the proposition that vertical pricing restraints do not fall within the *per se* violations enumerated in section 3(1) of our act, they may still be violative of the general prohibition against unreasonable restraints of trade contained in section 3(2). It provides:

"Sec. 3. Every person shall be deemed to have committed a violation of this Act who shall:

\* \* \*

(2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce." (Ill. Rev. Stat. 1983, ch. 38, par. 60—3(2).)

However, the facts alleged here do not amount to price fixing of either the horizontal or vertical variety.

Price fixing is not present merely because FMNA agreed to sell automobiles at a reduced price to the Ohio corporations. The facts alleged make it clear that these corporations were customers, not competitors, of FMNA. Accordingly, there was no horizontal price fixing because there was no agreement among competitors to fix prices. The complaint is also devoid of any allegations that FMNA and the Ohio corporations entered into an agreement which fixed the price at

which the corporations would resell Fiat automobiles to third parties. Consequently, there are no facts alleged which would support a claim of vertical price fixing.

◼ Regal also alleged that the agreement between FMNA and the Ohio corporations amounted to price discrimination because it discriminates in price "between purchasers of commodities of like grade and quality." Initially, we note that the Illinois act contains no explicit restrictions against price discrimination. However, plaintiff contends that price discrimination is prohibited under the general provisions of section 3(2) if it results in an unreasonable restraint of trade or commerce. We disagree.

Our supreme court has recognized that the Illinois Antitrust Act was patterned after the Sherman Act (15 U.S.C. sec. 1 *et seq.* (1976)) and *"consciously omitted the Clayton Act* (15 U.S.C. sec. 12 *et seq.* (1976))."* (Emphasis added.) (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 369, 432 N.E.2d 855.) Yet, present Federal law against price discrimination is contained in the Robinson-Patman amendments to the Clayton Act (15 U.S.C. sec. 13 (1982)), not the Sherman Act. In fact, since the time of its original enactment in 1914, it was the Clayton Act which prohibited price discrimination. (38 Stat. 730, sec. 2 (1914).) Our General Assembly could have specifically prohibited price discrimination just as it specifically prohibited price fixing, monopolization, horizontal allocation of markets, and other acts proscribed by the Federal antitrust laws. The fact that the legislature did not do so, when coupled with the fact that it consciously omitted the Clayton Act in favor of a Sherman-type statute, evinces a legislative intent that price discrimination prohibited under the Clayton Act not be actionable under the Illinois statute. Accordingly, plaintiff's complaint fails to state a cause of action for price discrimination.

In view of the foregoing, we find that the trial court properly dismissed plaintiff's price-fixing and price-discrimination claims. Since Regal has failed to state an individual cause of action in these areas, the attempted class action must also fail.

◼ Next, we address those issues relating to the trial court's dismissal of count II of the fourth amended complaint because it failed to state a cause of action against FMNA. Count II is based on a January 21, 1983, letter which FMNA sent to Regal and all other franchised dealers in the United States. The letter terminated the franchisees' dealer agreements and all current FMNA incentive programs; offered Regal and all other franchisees a "Fiat Service and Parts Center Agreement" (service agreement); and offered special retail incentives

and discounts on FMNA's remaining inventory to dealers accepting the service agreement. In count II, Regal charged FMNA with having violated section 3(2) of the Act and with breach of contract.

The first wrongdoing alleged is a purported conspiracy among FMNA, Carrozzeria Bertone S.p.A. (Bertone), the manufacturer of the Fiat X 1/9 sports car, and Industrie Pininfarina S.p.A. (Industrie), the manufacturer of the Spider 2000 sports car, and Regal as an "unwilling coconspirator," to improperly terminate the dealer agreements of all Fiat dealers in violation of section 3(2). Assuming, *arguendo*, that the terminations were improper, we believe Regal has failed to state a violation of our act.

Preliminarily, we note that there is a significant difference between section 3(2) of the Illinois Antitrust Act and section 1 of the Sherman Act. As the district court observed in *Evanston Motor Co., Inc. v. Mid-Southern Toyota Distributors, Inc.* (N.D. Ill. 1977), 436 F. Supp. 1370, 1373:

> "Unlike Section One of the Sherman Act, Section 3(2) of the Illinois Antitrust Act clearly prohibits only those conspiracies which *unreasonably* restrain trade or commerce. The clear intent of including the word 'unreasonably' was to require a rule of reason analysis and to eliminate the category of 'per se offenses' from that provision." (Emphasis in original.)

In *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463, our Illinois Supreme Court discussed the elements of a claim under section 3(2), holding that "[t]he plaintiff must allege that a conspiracy in fact existed and that the conspiracy unreasonably restrained trade." (91 Ill. 2d 138, 154.) The court also held that the anticompetitive effects of the purported conspiracy must be sufficiently alleged.

Following the *College Hills* decision, this court denied a petition for rehearing and adhered to its prior decision that the complaint before it failed to state a cause of action under section 3(2). (*Tru-Link Fence Co. v. Reuben H. Donnelley Corp.* (1982), 104 Ill. App. 3d 745, 432 N.E.2d 1188.) After noting that the complaint did allege the existence of an illegal conspiracy and that the plaintiff did plead actions taken in furtherance of the conspiracy, we held:

> "The complaint before us does not, however, state any ultimate facts as to how this alleged conspiracy manifested itself with respect to the marketplace or what ultimate anticompetitive effects of the alleged conspiracy were realized. Plaintiff alleges only a pure conclusion that the conduct of the defendants 'placed, and continues to place an unreasonable restraint on

trade or commerce' and has caused plaintiff to lose potential customers. We believe these conclusory statements do not constitute a factual statement as to how the conspiracy operated to the detriment of the plaintiff and the marketplace." 104 Ill. App. 3d 745, 754.

In the instant case, all that Regal alleges in support of its antitrust claim is that "the effect of [the alleged conspiracy to terminate the dealer agreements] is to restrain trade and commerce in the sale of Fiat products and Fiat Spider 2000 and X 1/9." As in *Tru-Link*, there is no allegation in count II of how the alleged conspiracy manifested itself with respect to the marketplace or what ultimate anticompetitive effects were realized. Indeed, Regal does not even allege that the purported restraint of trade was unreasonable. Accordingly, count II fails to state a cause of action under section 3(2) for the termination of Regal's dealer agreement.

■ Regal also alleged that FMNA's liquidation program was an illegal tying arrangement. The January 21 letter offered Regal a service agreement pursuant to which Regal would have the opportunity to continue to perform authorized Fiat service and warranty work. The letter states that if Regal accepted the service agreement, it would be entitled to participate in FMNA's liquidation program for the remaining 1982 vehicles in FMNA's inventory. Under this program special discounts were offered on these vehicles. Regal asserts that conditioning participation in the liquidation program on its signing the service agreement is a tying arrangement in violation of section 3(2).

A tying arrangement is an agreement by a party to sell one product (the "tying product") only on the condition that the buyer also purchase a different product (the "tied product"). (*Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, 263, 423 N.E.2d 1230.) Although tying arrangements are not specifically addressed by the Illinois Antitrust Act, they have been held to be prohibited under section 3(2) if, when tested by the "rule of reason," they are found to be injurious to competition. 98 Ill. App. 3d 254, 263.

Here, we do not believe FMNA's liquidation program and service agreement can be considered an illegal tie-in. The requirement of purchasing one product in order to be allowed to purchase another as set forth in *Amalgamated Trust* simply does not exist. In the instant case, Regal would not have been required to purchase anything, whether goods or services, from FMNA in order to be allowed to purchase the remaining cars in FMNA's inventory at a discount. Rather,

plaintiff had to merely accept appointment as a service and parts center under the service agreement in order to qualify for the discounts. We believe this arrangement was meant to fulfill FMNA's legitimate business objectives of assuring that its products receive proper predelivery preparation and its customers qualified repair service when necessary. Accordingly, from the facts alleged, we find no illegal tying arrangement and no unreasonable restraint of trade here.

■ Next, plaintiff contends the trial court improperly dismissed its breach-of-contract claim contained in count II. The January 21 letter from FMNA to Regal upon which the breach-of-contract claim was based indicates the following events leading to the termination of Regal's dealer agreement: (1) Bertone and Industrie terminated their distribution agreements whereby they were distributing the X 1/9 and Spider 2000 sports cars to FMNA; (2) the sales agreement between Fiat Auto S.p.A. and FMNA whereby the latter was appointed the authorized distributor for Fiat automobiles provides for its automatic termination in the event Bertone and Industrie no longer supply cars to FMNA; and (3) paragraph 53 of the standard provisions to the dealer agreement with Regal and other Fiat dealers provides for its immediate termination in the event of the termination of the Fiat sales agreement between Fiat S.p.A. and FMNA or in the event that FMNA shall cease to be an authorized distributor of Fiat products pursuant to written contract between FMNA and Fiat S.p.A. Regal's objections to the termination of its dealer agreement set forth in count II center around the absence of Fiat S.p.A. in the termination chain of events. The January 21 letter refers to a termination by Bertone and Industrie followed by a termination by Fiat *Auto* S.p.A.

Both parties agree that Fiat Auto S.p.A. is a wholly owned subsidiary of Fiat S.p.A., which came into existence sometime after Regal executed the dealer agreement with FMNA. As such, Fiat Auto S.p.A. functioned as Fiat S.p.A.'s successor in interest with respect to the FMNA sales and distributorship agreement. After reviewing the relevant contract provisions and plaintiff's allegations, one obvious truth emerges—under the terms of the dealer agreement, Regal was appointed a Fiat dealer only for so long as FMNA could supply Fiat vehicles to Regal. Once this supply to FMNA was cut off, whether by Fiat S.p.A., Fiat Auto S.p.A., Bertone, and/or Industrie, Regal clearly could no longer remain a dealer under paragraph 53 of the dealer agreement. In its complaint, Regal does not allege that Bertone and Industrie have not terminated their distribution agreements with FMNA, thus cutting off the only supply of automobiles available to FMNA. Nor does it allege that FMNA's failure to amend the dealer

agreement to reflect Fiat Auto S.p.A. instead of Fiat S.p.A. had any material effect on the operations of Fiat dealers in the United States. Count II is also devoid of any allegations that FMNA's sales agreement was not terminated or that FMNA continued to be an authorized Fiat distributor. Accordingly, the dealership terminations do not constitute a breach of contract under the facts alleged, since the dealership agreements provided for "immediate termination" in the event that FMNA was no longer supplied with Fiat automobiles by its suppliers. Since Regal failed to allege any facts showing these terminations were improper, the trial court properly dismissed this contract claim.

FMNA's January 21 letter further provided for the termination of all current incentive programs, effective that date. In count II, Regal alleged that this amounts to a breach of contract. However, plaintiff's own exhibits demonstrate this claim is unfounded.

Exhibits G and H to count II set forth two FMNA incentive programs. The first in time, exhibit H, was effective from October 21, 1982, until November 30, 1982. Thus, it ended of its own accord almost two months prior to the January 21, 1983, letter. Regal makes no allegation whatsoever that it has not been paid any benefits to which it was entitled under this program. Rather, plaintiff only alleges that it purchased certain cars on December 21, 1982, some three weeks after this incentive program had concluded. Accordingly, the facts alleged fail to demonstrate that Regal ever qualified for the first incentive program or that it has been or will be denied any payments or credits to which it is entitled.

■ The second incentive program and the only one still in effect on January 21, 1983, is set forth in exhibit G of count II. It began on December 15, 1982, and was to continue "until further notice." The January 21 letter provided such notice, and the termination of the program as of that date was therefore proper. Regal alleges that it purchased certain vehicles from FMNA on December 21 and that "Fiat is cancelling and breaching its agreement to discount the cars." However, Regal misrepresents the nature of this program in describing it as involving discounts. Under the terms of the program, FMNA offered its dealers cash incentive payments for each 1982 Fiat sports car *sold to a retail customer* during the program. Dealers were not offered any discounts for purchasing vehicles at wholesale from FMNA during the program. Plaintiff has failed to allege it ever sold any of the sports cars to a retail customer during the period the incentive program was in effect. Accordingly, the facts alleged do not demonstrate that Regal is entitled to any payments under this incen-

tive program, and the trial court properly dismissed this breach-of-contract claim.

In view of the foregoing, we find the trial court properly dismissed count II for failure to state a cause of action under section 3(2) or for breach of contract. Accordingly, we need not reach the issue of whether or not class status was improperly denied for count II or whether the trial court erred in refusing to grant Regal a preliminary injunction or temporary restraining order. The two dismissals appealed from are therefore affirmed.

■ Finally, there is the remaining issue of whether the trial court properly denied Regal leave to reinstate the class action allegations of the third amended complaint, which sought injunctive relief and money damages on behalf of a class of all franchised Fiat dealers in the United States to whom FMNA purportedly refused to sell Fiat models 124 and X 1/9 unless the dealers also purchased models 132 and 128. Regal's individual cause of action based on this alleged illegal tying arrangement is currently pending in the trial court.

Illinois case law has clearly established that an order denying class certification is not final and may be appealed from only under the permissive interlocutory appeals provisions of Supreme Court Rule 308 (73 Ill. 2d R. 308). (*Levy v. Metropolitan Sanitary District* (1982), 92 Ill. 2d 80, 440 N.E.2d 881.) Rule 308 provides that, upon application, the appellate court may, in its discretion, permit an appeal from an otherwise nonappealable interlocutory order under certain circumstances. However, in the present case no application for leave to appeal has been sought by plaintiff in the manner contemplated by Rule 308(b), nor have we ever granted such an application on behalf of either party with respect to the trial court's ruling on this class-certification issue. Furthermore, while FMNA defends the trial court's ruling on this matter at length, plaintiff's brief is silent on this issue. Under these circumstances, we believe it would be improper for us to review the propriety of the trial court's denial of class certification and expressly refrain from doing so.

In summary, we affirm the dismissals entered below and do not reach the issue of whether class action status was improperly denied with respect to plaintiff's remaining cause of action currently pending in the trial court.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.