(No. 66431.—

WALTER LAUGHLIN *et al.*, Appellees and Cross-Appellants, v. EVANSTON HOSPITAL *et al.*, Appellants and Cross-Appellees.

*Opinion filed January 24, 1990.*

CALVO, J., took no part.
CLARK, J., concurring.

John T. Cusack, Peter J. Meyer and Mary Beth Cyze, of Gardner, Carton & Douglas; Richard William Austin and Kevin J. Egan, of Winston & Strawn; Jack R. Bierig, David F. Graham, James C. Dechene and David B. Johnson, of Sidley & Austin; Gary Senner, Jeffrey P. Lennard and Steven M. Levy, of Sonnenschein, Carlin, Nath & Rosenthal; Kenneth B. Drost and Michael R. Callahan, of Katten, Muchin & Zavis; and Michael A. Haber, all of Chicago, for appellants and cross-appellees.

Robert F. Coleman, Kenneth Philip Ross and Eugene J. Schiltz, of Robert F. Coleman & Associates, and

Eugene I. Pavalon, Michael C. Greenfield and Steven Feinberg, of Asher, Pavalon, Gittler & Greenfield, Ltd., all of Chicago, for appellees and cross-appellants.

Mark Damian Deaton, Daniel J. Mulvanny and John T. Bomher, of Naperville, for *amici curiae* Illinois Hospital Association *et al.*

JUSTICE WARD delivered the opinion of the court:

The trustees of Masonry Institute, Welfare Fund of Bricklayers Local 21 and the trustees of Chicago Truck Drivers, Helpers and Warehouse Workers Union Health and Welfare Fund (the trustees), on their own behalf and on behalf of a class of similarly situated third-party payors who indemnify or insure patients for the cost of hospital services, filed a two-count complaint in the circuit court of Cook County against 10 Chicago-area hospitals. The complaint alleged that the defendants' pricing practices are an unfair method of competition and violate the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*) (the Consumer Fraud Act) and are an unreasonable restraint of trade in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*) (the Antitrust Act). The trial court dismissed both counts for failure to state a cause of action. The appellate court affirmed the dismissal of the count alleging violation of the Consumer Fraud Act and reversed the dismissal of the antitrust claim, remanding to the trial court for consideration of whether the hospitals' conduct amounted to an unreasonable restraint of trade. (163 Ill. App. 3d 10.) We granted the hospitals' petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315). The plaintiffs also cross-appeal under Rule 318(a) (107 Ill. 2d R. 318(a)).

The plaintiffs challenge existing contracts between each of certain named hospitals and Health Care Ser-

vices Corporation, the administrator of the Illinois Blue Cross Plan (Blue Cross). The contracts, which are all similar in terms, provide for an annual reconciliation of accounts between the hospitals and Blue Cross. The complaint states that Blue Cross is the only third-party payor with such an arrangement. The contracts between Blue Cross and each of the hospitals were negotiated as early as 1952 and were reviewed and approved by the Illinois Department of Insurance pursuant to the Non-Profit Health Care Service Plan Act. (Ill. Rev. Stat. 1985, ch. 32, par. 555.) The approved contracts are a matter of public record.

All third-party payors, including Blue Cross, are charged the same for all provided services according to each hospital's posted charges. Blue Cross makes periodic payments to each hospital based on the posted charges. According to the terms of the contract, however, if the total amount received by a hospital in interim payments from Blue Cross during the course of a year exceeds 105% of the hospital's actual cost for that year for services provided, the amount in excess will be returned to Blue Cross at the end of the year. Thus, the profit to the hospital is fixed at 5%. The plaintiffs allege as a sample year, in 1982, approximately $50 million was returned to Blue Cross pursuant to the contracts.

Count I of the plaintiffs' complaint alleges that the hospitals' contracts with Blue Cross violate section 2 of the Consumer Fraud Act, which prohibits unfair methods of competition and unfair and deceptive practices. According to the complaint, the reconciliation payments provided for in the Blue Cross contracts were not disclosed to other third-party payors or to individual patients. Further, because the hospitals did not extend the same price terms to other third-party payors, the trustees claim the hospitals' conduct has required them to

pay the defendants greater amounts for hospital services.

Count II alleges that the hospitals' failure to voluntarily provide similar price reductions for services rendered to other third-party payors gives Blue Cross a substantial competitive advantage and constitutes an unreasonable restraint of trade in violation of section 3(2) of the Illinois Antitrust Act. As stated, the circuit court dismissed both counts of the plaintiffs' complaint.

The appellate court affirmed the dismissal of count I, holding that it did not state a cause of action under section 2 of the Consumer Fraud Act because it did not show that the defendants' conduct was unfair and because the contracts calling for the return of moneys to Blue Cross were matters of public record involving no deception. The court further held that the hospitals' conduct was not unfair under the Consumer Fraud Act because the Act does not incorporate the prohibition against differential pricing appearing in the Federal Clayton Act or its Robinson-Patman amendments. (163 Ill. App. 3d at 12-13.) The appellate court reversed the dismissal of count II, stating that although the Illinois Antitrust Act does not incorporate the Clayton Act and its Robinson-Patman amendments, price discrimination can constitute a cause of action under section 3(2) of the antitrust statute *if* it unreasonably restrains trade. 163 Ill. App. 3d at 14.

The issues before the court, therefore, are: (a) whether count I, which alleges that each hospital charges all third-party payors according to its posted charges but then conducts an annual reconciliation of Blue Cross' account only without providing such an accounting to competing third-party payors, alleges an unfair or deceptive act or practice, or an unfair method of competition, and thus a cause of action under section 2 of the Consumer Fraud Act; and (b) whether count II,

which alleges each hospital's failure to voluntarily provide other third-party payors with the same reduced charges for their services, states a cause of action under section 3(2) of the Illinois Antitrust Act as an unreasonable restraint of trade.

## The Antitrust Claim

The plaintiffs contend that the hospitals' payment of "rebates" to Blue Cross alone and their failure to offer like terms to other third-party payors constitutes an unreasonable restraint of trade in violation of section 3(2) of the Illinois Antitrust Act. The Act, in part, provides:

> "Every person shall be deemed to have committed a violation of this Act who shall:
>
> * * *
>
> (2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce ***." (Ill. Rev. Stat. 1985, ch. 38, par. 60—3.)

The plaintiffs argue that the conduct involved here constitutes price discrimination. Price discrimination has been prohibited under Federal antitrust law by sections 2(a) and 2(c) of the Clayton Act as amended by the Robinson-Patman Act. Section 2(a) prohibits discriminations in price between competing buyers where the effect of such discrimination may be to substantially lessen or destroy competition. (15 U.S.C. §13(a) (1988).) Section 2(c) prohibits indirect means of price discrimination such as rebates or discounts. (15 U.S.C. §13(c) (1988).) The plaintiffs, citing section 11 of our statute, which provides that our courts can look to Federal interpretations of similar laws in construing our statute, argue that conduct which is considered unreasonable under section 2(a) and section 2(c) of the Clayton Act should also be considered an unreasonable restraint of trade in violation of section 3(2) of the Illinois antitrust statute.

We would observe that basically the plaintiffs' only complaint is that they were not afforded the same pricing terms as Blue Cross. Because only Blue Cross is given such terms, the plaintiffs argue that the trade of providing hospitalization insurance has been restrained. They contend that because of the "rebates" they have been and continue to be required to pay the defendants higher prices for hospital services than Blue Cross is required to pay for identical services. Because no other third-party payor receives the benefit of such "rebates," the plaintiffs say they are unable to effectively compete with Blue Cross. Although the hospitals did not voluntarily make like terms available to third-party payors other than Blue Cross, it appears that each plaintiff was free to bargain on an individual basis with each of the hospitals so as to obtain more advantageous terms. Not only is there no indication in the complaint that the plaintiffs or any other third-party payor could not have negotiated similar price reductions from the hospitals, there is no suggestion that the plaintiffs attempted to obtain similar terms. It is also clear that the pricing terms were not predatory (below the hospitals' costs). The plaintiffs argue that they, nonetheless, have stated a cause of action because it was the defendants' responsibility to advise all of their "customers" of the availability of discounts and to offer all of them the same opportunity to obtain the same or comparable terms. The plaintiffs cite decisions under section 2 of the Clayton Act, and equivalent State statutes, for the proposition that the defendants are required to take affirmative action to inform all customers of the availability of rebates or similar reimbursements. *Century Hardware Corp. v. Acme United Corp.* (E.D. Wis. 1979), 467 F. Supp. 350; *Forster v. Kawasaki Motors Corp.* (1985), 73 Or. App. 439, 698 P.2d 1001.

The defendants' response is that the complaint does not state a cause of action under our Antitrust Act be-

cause it is based solely on the allegation of differential pricing, which the defendants say is insufficient to constitute an unreasonable restraint of trade under the Illinois Antitrust Act. They state that our statute is patterned on the Sherman Act and not the Clayton Act. Section 1 of the Sherman Act, on which section 3(2) of our act is patterned, provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States *** is declared to be illegal ***." (15 U.S.C. §1 (1976).)

Although the Sherman Act prohibits a wide range of conduct, the granting of rebates (*Knuth v. Erie-Crawford Dairy Cooperative Association* (3d Cir. 1972), 463 F.2d 470, 475; *O.M. Droney Beverage Co. v. Miller Brewing Co.* (D. Minn. 1973), 365 F. Supp. 1067, 1072) and engaging in nonpredatory price discrimination (predatory pricing occurs when the seller offers his product or service below cost) in and of themselves have been held not to constitute an unreasonable restraint of trade in violation of the Act (*Travelers Insurance Co. v. Blue Cross* (3d Cir. 1973), 481 F.2d 80, 85; *Zoslaw v. MCA Distributing Corp.* (9th Cir. 1982), 693 F.2d 870, 887; *Crowl Distributing Corp., Inc. v. Singer Co.* (D. Kan. 1982), 543 F. Supp. 1033, 1037; *Monahan's Marine, Inc. v. Boston Whaler* (1st Cir. 1989), 866 F.2d 525.

The defendants state that differential pricing encourages trade and is a result of bargaining in a competitive marketplace. Such competitive activity, they argue, is encouraged through a Sherman Act-type statute. Differential pricing is made illegal only under the Clayton Act and its Robinson-Patman amendments. The defendants contend that our legislature's adoption of a statute patterned after the Sherman Act and its conscious omission of the Clayton Act indicates the legislature's intent that price discrimination alone is not sufficient to constitute a

violation of the Illinois statute. Because our statute is patterned on the Sherman Act and because Federal courts have consistently held that differential pricing is not a violation of the Sherman Act, the defendants argue that an allegation of differential pricing clearly should not be sufficient to state a cause of action under our Antitrust Act.

The plaintiffs concede that the Illinois Antitrust Act contains no direct counterpart to the Clayton Act. The plaintiffs contend, however, that such conduct is indirectly prohibited by section 3(2) of our act. The plaintiffs argue that under the language of section 3(2) of our statute, there is a cause of action if the alleged price discrimination "unreasonably restrains trade." They point to the committee comments as supporting their contention that conduct constituting a cause of action for violation of the Clayton Act may also state a cause of action under our act. The comments provide:

> "[T]he Illinois Act contains no counterpart to Sections 2, 3, 7, and 8 of the Clayton Act or to Section 5 of the Federal Trade Commission Act. Hence, practices which would be violative of those federal provisions would be violative of the Illinois Act only if they were deemed unreasonably to restrain trade under the provisions of Section 3(2)." (Ill. Ann. Stat., ch. 38, par. 60—3, Bar Committee Comments—1967, at 453-54 (Smith-Hurd 1977).)

The plaintiffs argue that the reason the Illinois act does not contain an explicit counterpart to the Clayton Act was simply that the drafters intended that price discrimination would not be a *per se* offense under the statute.

The appellate court, adopting the plaintiffs' interpretation, held that the language of the statute shows that price discrimination can be violative of the Illinois Antitrust Act if it unreasonably restrains trade. (163 Ill. App. 3d at 14.) In so concluding, the appellate court declined to follow the holding in *Regal Motors, Inc. v. Fiat*

*Motors of North America, Inc.* (1985), 133 Ill. App. 3d
370. There it was held that a complaint alleging price
discrimination failed to state a cause of action under sec-
tion 3(2) of our act. The *Regal Motors* court observed
that our legislative drafters consciously omitted a State
counterpart to the substantive provisions of the Clayton
Act and the drafters specifically patterned the statute on
the Sherman Act. *Regal Motors*, 133 Ill. App. 3d at 374.

In construing a statutory provision, the judicial role is
to ascertain the intent of the legislature and to give it
effect. A court will examine the entire statute for guid-
ance as to that intent. A court will also seek to deter-
mine the objective the legislature sought to accomplish
and the evils it desired to remedy. (*City of Springfield v.
Board of Election Commissioners* (1985), 105 Ill. 2d 336,
341.) In the language of our Antitrust Act, any contract,
combination or conspiracy is illegal if it unreasonably re-
strains trade. In construing the statute, the plain lan-
guage of the Act also provides, in section 11 (Ill. Rev.
Stat. 1987, ch. 38, par. 60—11), that courts should look
to similar Federal statutes for guidance. In seeking the
intent of the legislature, the entire statute and all rele-
vant parts must be considered. (*Miller v. Department of
Registration & Education* (1979), 75 Ill. 2d 76, 81.) Sec-
tion 11 provides that "when the wording of this Act is
identical or similar to that of a federal antitrust law, the
courts of this State shall use the construction of the fed-
eral law by the federal courts as a guide in construing
this Act." (Ill. Rev. Stat. 1987, ch. 38, par. 60—11.) Al-
though the answer to whether price discrimination con-
stitutes an unreasonable restraint of trade is not clearly
provided in our act or in State decisions interpreting the
act, Federal law in this area is well developed.

The language of section 3(2) closely resembles section
1 of the Sherman Act and has no resemblance to section
2 of the Clayton Act. When a State legislature enacts a

statute modeled upon a Federal statute, it can be presumed that the legislature did so with the knowledge of the statute's construction by the Federal courts. (*County of Kane v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 614, 620.) We will construe section 3(2) in accordance with the construction given its Federal counterpart, the Sherman Act. The Sherman Act does not prohibit price discrimination. Only the Clayton Act and its Robinson-Patman amendments prohibit discriminatory pricing. *Falls City Industries, Inc. v. Vanco Beverage, Inc.* (1983), 460 U.S. 428, 75 L. Ed. 2d 174, 103 S. Ct. 1282.

Numerous Federal decisions have established that under the Sherman Act, *price discrimination in and of itself (e.g.*, a claim that a buyer was not offered the same price as a competing buyer) is not a violation of the Sherman Act. *Zoslaw v. MCA Distributing Corp.* (1982), 693 F.2d 870, 886 (price discrimination which results where buyers seek competitive advantage from sellers encourages the aims of the Sherman Act); *Crowl Distributing Corp. v. Singer Co.* (1982), 543 F. Supp. 1033, 1037; *Monahan's Marine, Inc. v. Boston Whaler, Inc.* (1st Cir. 1989), 866 F.2d 525 (the goal of the Sherman Act is the low price levels one would find in a well-functioning competitive market. The court's task is to develop rules that will discourage predatory pricing but allow "desirable price cutting activity." The Sherman Act's very purpose is to benefit consumers in part by encouraging low nonpredatory prices).

In *Travelers Insurance Co. v. Blue Cross* (3d Cir. 1973), 481 F.2d 80, the court considered, under section 1 of the Sherman Act, a situation similar to the one here. There, Blue Cross of Pennsylvania had over 100 contracts with area hospitals which prescribed the amounts and terms under which Blue Cross paid for the services rendered to its subscribers. Under the terms of the con-

tracts, Blue Cross reimbursed the hospitals for certain costs subject to a ceiling. Because of these limitations, Blue Cross paid 14% to 15% less for its subscribers' care than non-Blue Cross insurers paid for theirs. Because of these reductions in cost, Blue Cross was able to establish rates for hospitalization insurance lower than the rates of competing private insurance companies.

The plaintiff, a competing private insurance company, challenged these practices under the Sherman Act. Explaining that in negotiating with the hospitals Blue Cross had done no more than conduct its business as a good entrepreneur would, that is, to obtain the best terms possible, the court held that these arrangements were not unreasonable restraints of trade in violation of the Sherman Act. (*Travelers*, 481 F.2d at 84.) The court, observing that Blue Cross' initiative might make life harder for its commercial competitors, noted that the Sherman Act encourages sharp competition. The court also specially mentioned that there was no evidence that the plaintiff or other companies could not have achieved the same or similar price reductions. *Travelers*, 481 F.2d at 85.

Several State courts have also concluded that price discrimination itself is not prohibited under comparable State antitrust statutes. In Missouri, for example, the court in *Essex v. Getty Oil Co.* (Mo. App. 1983), 661 S.W.2d 544, 554, held that under its statute, which is patterned on section 1 of the Sherman Act and which provides for the use of Federal precedent in interpreting its provisions, an allegation of price discrimination in and of itself would not state a cause of action. Also in *State v. Mobil Oil Corp.* (1976), 38 N.Y.2d 460, 463, 344 N.E.2d 357, 358-59, 381 N.Y.S.2d 426, 428, the New York Court of Appeals, noting that price discrimination itself is not and never has been within the purview of the Sherman Act, held that "if our [State] Act is to be

considered a counterpart of the Sherman Act it does not extend to price 'discrimination as such." See also *Gregory Marketing Corp. v. Wakefern Food Corp.* (Law Div. 1985), 207 N.J. Super. 607, 504 A.2d 828.

The Clayton Act and its Robinson-Patman amendments specifically prohibiting price discrimination were enacted specifically because the Sherman Act and other preexisting antitrust statutes did not cover such practices. (*Federal Trade Comm'n v. Henry Broch & Co.* (1960), 363 U.S. 166, 168, 4 L. Ed. 2d 1124, 1127, 80 S. Ct. 1158, 1160; *Monahan's Marine, Inc. v. Boston Whaler, Inc.* (1st Cir. 1989), 866 F.2d 525; *Crowl Distributing Corp. v. Singer Co.* (D. Kan. 1982), 543 F. Supp. 1033, 1037; *Gregory Marketing Corp. v. Wakefern Food Corp.*, 207 N.J. Super. at 616-17, 504 A.2d at 833.) The Robinson-Patman Act has been characterized as an exception to, or a qualification of, the general national policy favoring free competition. *Exxon Corp. v. Governor of Maryland* (1978), 437 U.S. 117, 133, 57 L. Ed. 2d 91, 104, 98 S. Ct. 2207, 2217.

Section 3 of the Illinois act closely follows section 1 of the Sherman Act, and section 11 provides for the use of Federal precedent in interpreting the language of our statute. Based on this construction, one readily concludes that our legislature intended that an allegation of price discrimination alone would not be actionable under section 3(2). The committee comments to the Illinois act are supportive of our holding:

> "[I]t was not considered wise to incorporate all features of the comparable federal legislation. S.B. 116 is similar to the federal Sherman Act of 1890 and to some of the contemporary legislation of the several states. It was not deemed necessary or desirable to include measures comparable to the several substantive antitrust sections of the Clayton Act of 1914." (Ill. Ann. Stat., ch. 38, par.

60—1 *et seq.*, Commentary on the 1967 Illinois Antitrust Act, at 441 (Smith-Hurd 1977).)

See also *People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 369, and Curtis & Decker, *The 1969 Amendments to the Illinois Antitrust Act*, 58 Ill. B.J. 698, 700-01 (1970), in which the authors note:

> "[T]he act cover[s] the subject matter of the Sherman Act [and] *** contain[s] no provision comparable to those of Sec. 2 of *** the Clayton Act. *** The omission *** of provisions going beyond the traditional areas of restraint of trade and monopoly and into the realms inhabited by the incipiency doctrine [embodied in the Clayton Act] was based on careful consideration of State law experience, State and local needs, the type and frequency of complaints received *** and what might realistically be expected of state enforcement ***."

The plaintiffs cite *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 184, arguing that this court determined there is no authority for concluding that the legislature expressly or by implication had rejected legislation similar to section 2(c) of the Clayton Act. The argument is an empty one. The court's comment was made in the course of interpreting the Consumer Fraud Act. The question here is whether the legislature intended provisions of the Clayton Act to be a part of the Antitrust Act; we have seen that it did not.

We would add that it is clear the legislature considered inclusion of a price discrimination prohibition undesirable. On the necessity or desirability of including measures comparable to the Clayton Act, the committee comments further provide:

> "It can, of course, be urged that local business should be burdened with the same proscriptions as national and regional business. On the other hand, the Clayton *** Act provisions have been controversial and many competent observers deem them not to be necessary. The Bar Association bill was not motivated by a desire to add unneces-

sary legal burdens to those already imposed upon businessmen. It was drawn in the hope that its basic approach would find favor in the business world." Ill. Ann. Stat., ch. 38, par. 60—1 *et seq.*, Commentary on the 1967 Illinois Antitrust Act, at 441 (Smith-Hurd 1977).

Essentially, the plaintiffs have alleged injury to their ability to compete arising from nothing more than simple price discrimination. Price discrimination of the character complained of by the plaintiffs, that is, discrimination which is not predatory, which is not the result of a concerted refusal to deal or a conspiracy and the basis of which is simply that the plaintiff did not obtain services at a lesser price bargained for by a competing buyer, is, in and of itself, not sufficient to state a cause of action under section 3(2) of our act.

## The Consumer Fraud Issue

We next consider whether the appellate court erred in holding that the first count of the trustees' complaint was not sufficient to state a cause of action under section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) (the Consumer Fraud Act). (163 Ill. App. 3d at 13.) Section 2 provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Com-

mission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1987, ch. 121½, par. 262.)

The plaintiffs' contention is that price discrimination constitutes an "unfair method of competition" and that it is not necessary to allege deception in a case involving injury to competition in order to state a cause of action under the Consumer Fraud Act. The statute provides that in construing the Consumer Fraud Act, courts shall give consideration to Federal decisions interpreting section 5(a) of the Federal Trade Commission Act, on which our statute is patterned. Section 5(a) of the Federal Trade Commission Act provides: "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." (15 U.S.C. §45(a)(1) (1988).) The prohibition against unfair methods of competition in section 5(a) of the Federal Trade Commission Act has been interpreted to include anticompetitive price discrimination prohibited under Federal law by sections 2(a) and 2(c) of the Clayton Act. (*Federal Trade Comm'n v. Indiana Federation of Dentists* (1986), 476 U.S. 447, 454, 90 L. Ed. 2d 445, 454, 106 S. Ct. 2009, 2015-16; *Times-Picayune Publishing Co. v. United States* (1952), 354 U.S. 594, 609, 97 L. Ed. 2d 1277, 1290, 73 S. Ct. 872, 880-81.) The plaintiffs contend that conduct violating sections 2(a) and 2(c) of the Clayton Act likewise constitutes a violation of the Consumer Fraud Act.

The defendants, supported by the brief filed by the Illinois Hospital Association and the Metropolitan Chicago Healthcare Council, *amici curiae,* argue that the Consumer Fraud Act was not intended as an additional enforcement mechanism of the antitrust legislation and that the Federal interpretations of the Federal Trade Commission Act stating that price discrimination can be an unfair method of competition are irrelevant as beyond

the legislative intendment of the Consumer Fraud Act. The defendants say that the dominating legislative intention was to protect consumers and others against various species of fraud and deceit. The defendants have the correct understanding of the Consumer Fraud Act's intendment. There is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust enforcement mechanism. The language of the Act shows that its reach was to be limited to conduct that defrauds or deceives consumers or others. The title of the Act is consistent with its content. The Consumer Fraud Act states it was enacted to "protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices." (Ill. Rev. Stat. 1987, ch. 121½, par. 261.) Further indication that this is a statute directed against fraud and not one designed to be an additional antitrust enforcement mechanism is that every one of the specifically prohibited acts set out in the Act describes a situation where a buyer is being harmed by overreaching or fraudulent conduct. To illustrate, numerous sections of the Consumer Fraud and Deceptive Practices Act prohibit specified fraudulent conduct. They include frauds relating to chain referral sales techniques (section 2A), door-to-door sales (section 2B), return of downpayments (section 2C), advertisements of credit rates (section 2K), advertisement of factory authorized services (section 2M), non-English language transactions (section 2N), and free prize or gift offers (section 2P) (Ill. Rev. Stat. 1987, ch. 121½, pars. 262A, 262B, 262C, 262K, 262M, 262N, 262P).

The plaintiffs' citation of *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, and *Perrin v. Pioneer National Title Insurance Co.* (1980), 83 Ill. App. 3d 664, is not in point. Both *Fitzgerald* and *Perrin* involved complaints by third-party consumers alleging that the

defendants had engaged in deceptive practices. Here third persons are not parties and the contracts were matters of public record. The plaintiffs have also abandoned their contention that the transactions were deceptive.

It is significant too that interpreting the Consumer Fraud Act as the plaintiffs urge would not only conflict with the intendment of the Act itself, but would also conflict with what we have decided on this appeal was the legislative intention regarding prohibitions against Robinson-Patman-type activities. As discussed above, the legislature in the Antitrust Act declined to include provisions against price discrimination because the legislature found that inclusion of such prohibitions would be undesirable. To construe the Consumer Fraud Act to give a cause of action for discriminatory pricing that the legislature refused to give under the Antitrust Act would be incongruous. Legislation is designed to be consistent. It would be inconsistent to provide that the very conduct which is not sufficient to state a cause of action under the Antitrust Act is sufficient to state a cause of action under the Consumer Fraud Act.

For the reasons given, the judgment of the appellate court is reversed in part and affirmed in part, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed in part and affirmed in part; circuit court judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

JUSTICE CLARK, concurring:

The majority has determined that the plaintiffs' complaint fails to state a cause of action both under the Illi-

nois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) and the Illinois Antitrust Act. For the following reasons, I concur.

## CONSUMER FRAUD COUNT

Count I of plaintiffs' complaint alleges that the defendants' practice of granting rebates to Blue Cross and no other third-party payor constitutes an "unfair method of competition" in violation of section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). The majority has rejected this claim, holding that count I does not state a cause of action because the reach of the Consumer Fraud Act is limited to either deceptive or fraudulent conduct. (133 Ill. 2d at 390.) While I agree that count I does not state a cause of action under the Act, I write because I do not agree that the prohibitions of the Consumer Fraud Act are limited to conduct that is either fraudulent or deceptive.

The Consumer Fraud Act was enacted to "protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices." (Ill. Rev. Stat. 1987, ch. 121½, par. 261.) Section 2 of the Act provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, *including but not limited to* the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** are hereby declared unlawful." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 121½, par. 262.)

In interpreting this section consideration is given to the interpretations of the Federal Trade Commission and the Federal courts relating to section 5(a) of the Federal Trade Commission Act (the FTC Act) even though our

courts are not bound by such interpretations. Ill. Rev. Stat. 1987, ch. 121½, par. 262; see also *Newman-Green, Inc. v. Alfonzo-Larrain R.* (N.D. Ill. 1984), 590 F. Supp. 1083, 1085.

Section 5(a) of the FTC Act, like the Consumer Fraud Act, prohibits "unfair methods of competition" and "unfair or deceptive acts or practices." (15 U.S.C. §45(a) (1973).) The unfair methods of competition that are prohibited by section 5 are not confined to those that were illegal at common law or those that are condemned by the antitrust laws. Congress specifically left the concept of "unfair" flexible to be defined with particularity by the myriad of cases from the field of business. (*FTC v. Motion Picture Advertising Service Co.* (1953), 344 U.S. 392, 394-95, 97 L. Ed. 426, 429-30, 73 S. Ct. 361, 363.) Thus, section 5 has been interpreted to prohibit as "unfair" conduct which is neither deceptive nor violative of Federal antitrust laws. (See, *e.g., Spiegel, Inc. v. FTC* (7th Cir. 1976), 540 F.2d 287 (Spiegel's practice of suing customers for delinquent credit accounts in a court distant from the consumer's residence, although not illegal, was nonetheless unfair within the meaning of section 5 because it violated public policy and was injurious to customers).) Factors that are considered by the FTC in determining whether a practice that is neither in violation of the Federal antitrust laws nor deceptive is nonetheless unfair include:

" '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " *FTC v. Sperry & Hutchinson Co.* (1972), 405 U.S. 233, 244 n.5, 31 L. Ed.

2d 170, 179 n.5, 92 S. Ct. 898, 905 n.5, quoting 29 Fed. Reg. 8355 (1964).

See also *Spiegel, Inc. v. FTC* (7th Cir. 1976), 540 F.2d 287, 293.

As both the Consumer Fraud Act and section 5 prohibit "unfair methods of competition" and "unfair or deceptive acts or practices," I believe that the statutes should be construed in a similar manner. This interpretation has been adopted by Federal courts that have applied the Consumer Fraud Act (see, *e.g.*, *Jays Foods, Inc. v. Frito-Lay, Inc.* (N.D. Ill. 1987), 664 F. Supp. 364; *Evanston Motor Co. v. Mid-Southern Toyota Distributors, Inc.* (N.D. Ill. 1977), 436 F. Supp. 1370 (cases in which the court considered whether the defendant's nondeceptive practices were unfair under the Consumer Fraud Act)) and in certain cases by the appellate court (see, *e.g.*, *Zinser v. Uptown Federal Savings & Loan, F.A.* (1989), 185 Ill. App. 3d 979; *Perrin v. Pioneer National Title Insurance Co.* (1980), 83 Ill. App. 3d 664 (cases which consider whether nondeceptive conduct is unfair under the Consumer Fraud Act); but see *Kellerman v. Mar-Rue Realty & Builders,Inc.* (1985), 132 Ill. App. 3d 300 (which holds that fraud or deception must be alleged to state a cause of action under the Consumer Fraud Act).) Consequently, I believe that to state a cause of action under the Consumer Fraud Act, it is sufficient to allege that the complained-of conduct was "unfair": the conduct need not be fraudulent or deceptive.

In the present case, plaintiffs maintain that the defendants' practices constitute an unfair method of competition. Plaintiffs contend that the practices in question amount to price discrimination which is prohibited by sections 2(a) and (c) of the Clayton Act, and that violations of the Clayton Act are considered unfair practices under section 5(a). Since our courts look to Federal interpretations of section 5(a) in construing the Con-

sumer Fraud Act, plaintiffs maintain that price discrimination should be considered an unfair practice under the Consumer Fraud Act.

While it is true that discriminatory pricing is prohibited by sections 2(a) and (c) of the Clayton Act, these provisions are limited to conduct affecting "commodities." (15 U.S.C. §§13(a), (c) (1988).) The term "commodities" as used in these sections is restricted to products, merchandise or other tangible goods (*Freeman v. Chicago Title & Trust Co.* (7th Cir. 1974), 505 F.2d 527; *Baum v. Investors Diversified Services, Inc.* (7th Cir. 1969), 409 F.2d 872, 875); medical services are not "commodities" (*Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.* (7th Cir. 1986), 784 F.2d 1325, 1340). Thus, the practices involved in the present case do not violate sections 2(a) and 2(c) of the Clayton Act.

Even assuming the conduct in question did violate the Clayton Act, it would not necessarily be an unfair practice under the Consumer Fraud Act. (See *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 184 (not every violation of the Clayton Act is an unfair or deceptive practice under the Consumer Fraud Act).) Under the Consumer Fraud Act unfair conduct is defined on a case-by-case basis because of the futility of trying to anticipate all the unfair methods and practices a fertile mind might devise. Just as Congress left the concept of fairness to the FTC to define, so our legislature chose to frame the Consumer Fraud Act in general terms so as to permit construction and implementation of the statute on a case-by-case basis (*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 290; *Fitzgerald,* 72 Ill. 2d at 186), with the ultimate determination of what is "unfair" being left to the trier of fact (*Jays Foods, Inc. v. Frito-Lay, Inc.* (N.D. Ill. 1987), 664 F. Supp. 364, 368).

In the present case, plaintiffs have alleged that, pursuant to a contract between the defendants and Blue Cross, defendants pay rebates to Blue Cross and that, as a result of the rebates, the plaintiffs and the plaintiff class are required to pay higher prices than Blue Cross is required to pay for the same hospital services.

The plaintiffs have not alleged in count I that the defendants' conduct either directly injured consumers or that it indirectly injured consumers by affecting competition. Injury to the public is required under section 5 of the FTC Act (*FTC v. Klesner*(1929), 280 U.S. 19, 27, 74 L. Ed. 138, 144-45, 50 S. Ct. 1, 3), and the consensus of authority is that an injury to consumers, or at least injury to the public, is an essential element of a claim under the Consumer Fraud Act (see *Jays Foods, Inc. v. Frito-Lay, Inc.* (N.D. Ill. 1987), 664 F. Supp. 364 (and cases cited therein)). Plaintiffs have only alleged that, as a result of the defendants' conduct, they and other third-party payors have been economically injured. Injury to the public cannot be presumed from this allegation because, as the courts have repeatedly observed, injury to a competitor is not the same thing as injury to competition. (*Jays Foods*, 664 F. Supp. at 372.) Because count I does not allege an injury to consumers, it fails to state a cause of action under the Consumer Fraud Act. Accordingly, count I was properly dismissed.

## ANTITRUST COUNT

Count II of the complaint alleges that the hospitals' practice of giving rebates only to Blue Cross amounts to discriminatory pricing and constitutes an unreasonable restraint of trade in violation of section 3(2) of the Illinois Antitrust Act. The majority concludes that by modeling section 3(2) after the Sherman Act, rather than the Clayton Act, the legislature did not intend to prohibit price discrimination. (133 Ill. 2d at 383-84.) Conse-

quently, price discrimination is not actionable under section 3(2) of the Illinois Antitrust Act. (133 Ill. 2d at 386.) While I agree that count II does not state a cause of action under section 3(2), I do not concur in the majority's analysis.

Section 3(2) of the Illinois Antitrust Act provides that a person violates the Act if he "[b]y contract, combination, or conspiracy with one or more persons unreasonably restrain[s] trade or commerce." (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(2).) As noted by the majority, the Illinois Antitrust Act is patterned after section 1 of the Sherman Act and, consequently, we refer to Federal interpretations of section 1 for guidance when construing section 3(2) of the Illinois Antitrust Act. (133 Ill. 2d at 384.) Section 1 of the Sherman Act prohibits "[e]very contract, combination *** or conspiracy, in restraint of trade or commerce." (15 U.S.C. §1 (1976).) Recognizing that this language could be construed to render any commercial contract violative of the Sherman Act (*Board of Trade v. United States* (1918), 246 U.S. 231, 238, 62 L. Ed. 683, 687, 38 S. Ct. 242, 244), courts have tempered the Act by applying the "rule of reason" in determining whether a violation of section 1 has occurred (*Standard Oil Co. v. United States* (1911), 221 U.S. 1, 55 L. Ed. 619, 31 S. Ct. 502). Under the rule of reason, courts look to the effects of the restraint to determine whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition, or whether it suppresses or even destroys competition. In making that determination, courts ordinarily examine: (1) the facts peculiar to the business to which the restraint is applied; (2) its condition before and after the restraint was imposed; and (3) the nature of the restraint and its effect. *Board of Trade*, 246 U.S. at 238, 62 L. Ed. at 687, 38 S. Ct. at 243.

Ordinarily, whether particular action violates section 1 is determined through case-by-case application of the rule of reason. (*Business Electronics Corp. v. Sharp Electronics* (1988), 485 U.S. 717, 723, 99 L. Ed. 2d 808, 816, 108 S. Ct. 1515, 1519.) Certain categories of agreements, however, have been held to be *per se* violations, thus dispensing with the need for case-by-case evaluation. The *per se* rules are applicable only to conduct that is so anticompetitive that further examination of the challenged conduct is not necessary. (*Business Electronics*, 485 U.S. at 723-24, 99 L. Ed. 2d at 816, 108 S. Ct. at 1519.) Since price discrimination has been held not to be a *per se* violation of section 1 (*Crowl Distributing Corp. v. Singer Co.* (D. Kan. 1982), 543 F. Supp. 1033, 1037), allegedly anticompetitive discriminatory pricing arrangements are examined under the rule of reason. *St. Bernard General Hospital, Inc. v. Hospital Services Association of New Orleans, Inc.* (5th Cir. 1983), 712 F.2d 978, 985; see also *Monahan's Marine, Inc. v. Boston Whaler, Inc.* (1st Cir. 1989), 866 F.2d 525 (where defendant sold boats to plaintiff's competitors on better terms and at lower prices, court applied rule of reason to determine whether the anticompetitive effects of the agreements outweighed their legitimate business justifications); *Zoslaw v. MCA Distributing Corp.* (9th Cir. 1982), 693 F.2d 870, 886 (since vertical agreements are not a *per se* violation of section 1, court examined the arrangement to determine whether it was reasonable); *Travelers Insurance Co. v. Blue Cross of Western Pennsylvania* (3d Cir. 1973), 481 F.2d 80 (where plaintiff alleged that Blue Cross had a dominant competitive position resulting from the discriminatory pricing arrangement contained in Blue Cross' contract with area hospitals, the court examined the contract itself, as well as the setting in which it originated for unreasonable restraint-of-trade characteristics).

Based on these principles, I do not agree with the majority's conclusion that by modeling section 3(2) of the Illinois Antitrust Act after section 1 of the Sherman Act the legislature did not intend to prohibit price discrimination. (133 Ill. 2d at 387-88.) Rather, I believe that by patterning the Illinois act after the Sherman Act the legislature chose not to establish *per se* offenses, but intended that allegedly anticompetitive conduct be examined under the rule of reason. (See *Evanston Motor Co. v. Mid-Southern Toyota Distributors, Inc.* (N.D. Ill. 1977), 436 F. Supp. 1370, 1373 ("The clear intent of including the word 'unreasonably' [in section 3(2) of the Illinois Antitrust Act] was to require a rule of reason analysis and to eliminate the category of *'per se* offenses' from that provision"); see also *People ex rel. Scott v. Convenient Food Mart, Inc.* (1974), 21 Ill. App. 3d 97.) If price discrimination constitutes an unreasonable restraint of trade, it violates section 3(2) of the Illinois Antitrust Act. Accord *American Academic Suppliers, Inc. v. Beckley-Cardy, Inc.* (N.D. Ill. 1988), 699 F. Supp. 152, 156 (which holds that if price discrimination amounts to an unreasonable restraint of trade, it constitutes a cause of action under the Illinois Antitrust Act not because it is price discrimination, but because it is an unreasonable restraint of trade).

The conclusion that allegedly anticompetitive conduct should be examined under the rule of reason finds support in the historical and practice notes and committee comments to section 3(2). The historical and practice notes provide:

"Because *** section [3(2)] outlaws only that conduct which 'unreasonably' restrains trade, it is clear that a 'rule of reason' is to be applied. ***

***

Subsection (2) embraces a virtually endless number of restraints on competition which are not specifically prohibited as *per se* offenses under subsection (1). Typical of

such offenses are vertical price-fixing, boycotts or group refusals to deal, and tying agreements. These offenses are prohibited by the Illinois Act if, tested by the "rule of reason," they are found to be injurious to competition." (Ill. Ann. Stat., ch. 38, par. 60—3, Historical & Practice Notes—1970, at 460 (Smith-Hurd 1977).)

The comments provide:

"Section 3(2) prohibits unreasonable restraints of trade under the 'rule of reason' approach. *** It seems probable that, except where the language and structure of the Illinois Act indicate that a different result was intended, Sherman Act Section 1 cases will be followed by the Illinois courts when construing Section 3(2), particularly in light of the provisions of Section 11 of the Illinois Act.

Various arrangements which, as noted above, do not fall under the purview of Section 3(1) *** must meet the test of the 'rule of reason' established in Section 3(2). As pointed out in the discussion with reference to Section 3(1), *supra,* the courts should examine the competitive and economic purposes and consequences of such arrangements for the purpose of determining whether or not trade or commerce has been unreasonably restrained ***.
***

It will be noted that the Illinois Act contains no counterpart to Sections 2, 3, 7, and 8 of the Clayton Act or to Section 5 of the Federal Trade Communication Act. Hence, practices which would be violative of those federal provisions would be violative of the Illinois Act only if they were deemed unreasonably to restrain trade under the provisions of Section 3(2)." Ill. Ann. Stat., ch. 38, par. 60—3, Bar Committee Comments—1967, at 453-54 (Smith-Hurd 1977).

Having determined that discriminatory pricing arrangements which unreasonably restrain trade violate the Illinois Antitrust Act, the next inquiry is whether the plaintiffs' complaint sufficiently alleges that the defendants' conduct unreasonably restrains trade.

In order to state a cause of action under section 3(2), the complaint must allege that a conspiracy, contract or

combination in fact existed and that its effect was to unreasonably restrain trade. (*Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 521-22; *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 154.) In determining whether the complaint is adequate, pleadings are to be liberally construed. Allegations are sufficiently specific if they reasonably inform the defendants by factually setting forth the elements necessary to state a cause of action. (*College Hills*, 91 Ill. at 145.) Where the essential elements of the purported contract, conspiracy or combination and its anticompetitive effects under section 3(2) of the Illinois Act are alleged, the complaint states a cause of action and the question of whether the defendants' conduct was reasonable is a question of fact. *College Hills*, 91 Ill. 2d at 155.

In the present case, the complaint alleges that, due to the agreement between Blue Cross and the defendant hospitals, Blue Cross has a substantial competitive advantage which results in an unreasonable restraint of trade. However, plaintiffs do not allege any facts to support their claim that the defendants' conduct has an anticompetitive effect in the relevant market. The absence of a sufficient allegation of anticompetitive effect is fatal to the existence of a cause of action under section 1 of the Sherman Act (*Havoco of America, Ltd. v. Shell Oil Co.* (7th Cir. 1980), 626 F.2d 549, 554), and is similarly fatal to the existence of a cause of action under the Illinois Antitrust Act (see *Adkins*, 129 Ill. 2d at 522). Accordingly, I believe that count II is deficient, not because price discrimination is not actionable under section 3(2), but because it fails to allege an unreasonable restraint of trade. The trial court's dismissal of count II was proper.