Central Standard Life Insurance Company, Plaintiff-Appellant, v. C. Hayden Davis, et al., Abraham Lincoln Hotel Company, Abraham Lincoln Hotel Operating Company, and Charles H. Mitchell, Defendants-Appellees.

Gen. No. 10,067.

Third District.

May 14, 1956.

Rehearing denied June 11, 1956.

Released for publication June 11, 1956.

Vernon R. Loucks, of Chicago, and H. E. Fullenwider, of Springfield, for plaintiff-appellant; Charles O. Loucks, and James L. Henry, both of Chicago, of counsel.

Barber & Barber, of Springfield, and E. K. Bekman, of Ottumwa, Iowa, for C. Hayden Davis, F. M. Condit, E. E. Nicholson, Abraham Lincoln Hotel Operating Company, and Charles H. Mitchell, defendants-appellees; Clayton J. Barber, and Alton G. Hall, both of Springfield, of counsel; Giffin, Winning, Lindner & Newkirk, of Springfield, for Abraham Lincoln Hotel Company, defendant-appellee; Montgomery S. Winning, of Springfield, of counsel.

JUDGE REYNOLDS delivered the opinion of the court.

The plaintiff, Central Standard Life Insurance Company, as holder of 4098 shares of the preferred stock of the Abraham Lincoln Hotel Company, an Illinois corporation, filed suit in chancery in the circuit court of Sangamon county as a class action on behalf of itself and the other holders of preferred capital stock of said corporation, asking the court to direct a sale of the assets of the hotel company and to liquidate the corporation. To the complaint the defendant corporation filed an answer and a separate defense of estoppel. After the suit was started, Charles H. Mitchell intervened and answered the complaint, as an intervening defendant. In addition, the Abraham Lincoln Hotel Operating Company, an Illinois corporation, as lessee of the hotel, and C. Hayden Davis, F. M. Condit and E. E. Nicholson, holders of common capital stock of the Abraham Lincoln Hotel Company named as defendants, filed their answer. The matter was referred to a

master in chancery, and on December 3, 1954, the master in chancery, in his report, held that there was no evidence of any dissent by the plaintiff or its predecessor in title to any action taken by the boards of directors or stockholders, and that the actions of the defendants, C. Hayden Davis, F. M. Condit and E. E. Nicholson had not been illegal, oppressive or fraudulent, and that the action should be dismissed. The plaintiff filed objections to the master's report, which were overruled and these objections by agreement of the parties stood as exceptions to the court, and on January 10, 1955, the court overruled the exceptions to the report of the master in chancery and approved the same and dismissed the plaintiff's complaint for want of equity. From that decree the plaintiff appeals to this court.

The Abraham Lincoln Hotel Company was incorporated about May 1, 1924. The corporation acquired real estate and a leasehold interest in certain property for the site of the hotel, and on August 1, 1924, issued $700,000 of first mortgage bonds bearing interest of 6 per cent secured by lien on the fee, leasehold interest and building of the corporation. At that time 7250 shares of preferred capital stock were issued of $100 par value per share, carrying a $7\frac{1}{2}$ per cent cumulative dividend provision. These shares of preferred stock were sold for $725,000. At the same time, the corporation issued 8000 shares of the common stock without par value, which were sold at $5 per share, or a total of $40,000. Of the shares of stock issued, both preferred and common, the plaintiff at the time of the commencement of the suit held 4098 shares of the preferred stock. The others were scattered among approximately 400 owners, and C. Hayden Davis owned 7990 shares, F. M. Condit owned 5 shares and E. E. Nicholson owned 5 shares of the common stock, the three holding all of the common stock.

247

The Abraham Lincoln Hotel Operating Company, an Illinois corporation, defendant herein, was organized to operate the hotel, and on June 1, 1944, entered into a lease with the Abraham Lincoln Hotel Company for the lease of the hotel. This lease was for 15 years and expires on August 1, 1959. By the terms of the lease the operating company was to pay all general and special taxes, ground rents, certain insurance and other expenses, and one-half of the profits from the operation of the hotel as rent. After the suit was commenced on April 24, 1954, C. Hayden Davis, Mabel E. Davis and John Hayden Davis sold to Charles H. Mitchell for the sum of $1,500,000, 8000 shares of common stock and 127 shares of the preferred stock of the Abraham Lincoln Hotel Company, 4051 shares of the common capital stock and 418 shares of the preferred capital stock of the Abraham Lincoln Hotel Operating Company, together with the fixtures, furnishings, equipment, merchandise and other chattel property of the hotel and the drug store located in the said hotel building. By reason of his interest in the said hotel company and the operating company, Charles H. Mitchell was permitted to file an intervening petition and answer in this cause on May 25, 1954.

There is no dispute as to certain of the facts. C. Hayden Davis, through his ownership of approximately 8000 shares of the common stock, was in control of the Abraham Lincoln Hotel Company, and by his ownership of practically all of the stock of the Abraham Lincoln Hotel Operating Company, was also in control of that corporation. It is not disputed that no dividends have been paid on the preferred stock of the Abraham Lincoln Hotel Company since 1931. There is a dispute as to the value of the hotel, the plaintiff claiming and submitting evidence to the effect that the hotel is worth approximately $700,000 to $1,000,000. The defendants deny this and claim that the property and net assets of the hotel company is in excess of

248

$2,000,000, and in support of their estimate show the appraisal of the property by Lloyd-Thomas Company showing net value of the property at $2,150,273.77, and the purchase by Charles Mitchell of the stock and merchandise of the hotel operating company for $1,500,000. The plaintiff, who seeks to make this a class action on behalf of itself and the other stockholders, sets up as grounds for its complaint that the acts of C. Hayden Davis and those in control of the hotel corporation are illegal, oppressive or fraudulent; that the corporate assets of the company have been misapplied or wasted and asks the court to order, direct and decree that the assets and business of the hotel company be liquidated; that a receiver be appointed; that the property of the hotel company be sold upon such terms and conditions as to the court shall seem proper, and the proceeds of the sale be applied to extinguish the indebtedness of the hotel company, and that any proceeds from the balance be turned over and delivered to the holders of the preferred stock. The principal question before this court is whether or not a court of equity under the conditions here shown has the authority and right to liquidate the assets and business of a corporation. The other question is whether or not the plaintiff's predecessor in title to the stock of the hotel company acquiesced in the actions of the boards of directors or stockholders and is therefore estopped.

In discussing the right of the minority stockholders to dissolve the corporation, the plaintiff cites the case of Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197. This is an old case, decided long before the enactment of the present corporation act, but the law as laid down then is equally applicable today. In that case, it was said: "In the absence of statutory authority, courts of chancery had no jurisdiction to decree a dissolution of a corporation by declaring a forfeiture of its franchise, either at the suit of an individual or of the State. . . . The mode of enforcing a forfeiture of the char-

249

ter at common law was by *scire facias* or *quo warranto* in courts of law only, and at the suit, only, of the sovereign. The judgment in such cases, at law, relates solely to the right to exercise the corporate franchise, and operates to extinguish corporate existence. In respect of trade corporations, independently of statutory provision, and notwithstanding the dissolution of the corporation, its assets belong to those who contributed to its capital and for whom it stood as representative in the business in which it was engaged, and are treated in equity as a trust fund, to be administered for the benefit of the *bona fide* holders of stock, subject to the just claims of creditors of the corporation." And the court in that case continuing, said: "The necessity for invoking the aid of a court of equity after judgment of forfeiture at law, that court alone being competent to reach and administer the fund, has led to statutory enactments vesting courts of equity with jurisdiction to decree a dissolution of the corporation and to wind up its affairs, in given cases, at the suit of an individual beneficiary of the fund. The power to confer such jurisdiction by statute, as one of the powers over corporations reserved by the State, has been uniformly recognized, and nowhere more clearly than in this State . . . and whenever the power of the court of chancery has been properly invoked the jurisdiction has been sustained. Life Ass. of America v. Fassett, 102 Ill. 315; Chicago Life Ins. Co. v. The Auditor, 101 Ill. 82; Mining Co. v. Mining Co., 116 Ill. 170, and cases supra." The court then proceeds to enumerate the grounds set out in the statute for the courts of equity to act in dissolving a corporation. And the court continuing, said: "It is, however, fundamental in the law of corporations, that the majority of its stockholders shall control the policy of the corporation, and regulate and govern the lawful exercise of its franchise and business. . . . Every one purchasing or subscribing for stock in a corporation impliedly agrees that he will be bound by

250

the acts and proceedings done or sanctioned by a majority of the shareholders, or by the agents of the corporation duly chosen by such majority, within the scope of the powers conferred by the charter, and courts of equity will not undertake to control the policy or business methods of a corporation, although it may be seen that a wiser policy might be adopted and the business more successful if other methods were pursued. The majority of shares of its stock, or the agents by the holders thereof lawfully chosen, must be permitted to control the business of the corporation in their discretion, when not in violation of its charter or some public law, or corruptly or fraudulently subversive of the rights and interests of the corporation or of a shareholder."

The present statute providing for the dissolution of a corporation is Chapter 32, Section 157.86 of Illinois Revised Statutes. That section provides as follows:

"(a) In an action by a shareholder when it is made to appear:

"(1) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

"(2) That the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose term has expired or would have expired upon the election of their successors; or

"(3) That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; or

"(4) That the corporate assets are being misapplied or wasted.

"(b) In an action by a creditor:

"(1) Whose claim has been reduced to judgment and an execution thereon returned unsatisfied and it is made to appear that the corporation is unable to pay its debts and obligations as they mature in regular course of its business; or

"(2) When the corporation has admitted in writing that the claim of the creditor is due and owing and it is made to appear that the corporation is unable to pay its debts and obligations as they mature in the regular course of its business.

"(c) Upon application by a corporation which has filed a statement of intent to dissolve, as provided in this Act, to have its liquidation continued under the supervision of the court.

"(d) When an action has been filed by the Attorney General to dissolve a corporation and it is made to appear that liquidation of its business and affairs should precede the entry of a decree of dissolution."

██ ██ So far as this case is concerned, only subsections (a)–(3) and (a)–(4) need to be considered. These grounds are set up in the complaint in Paragraph 9, where it is claimed that the acts of C. Hayden Davis and those who are in control of the corporation, are illegal, oppressive or fraudulent and that the corporate assets are being misapplied or wasted. If any of these charges are proved, then there is no question of the right of the court to decree dissolution and for the appointment of a receiver. The plaintiff impliedly recognized by the use of such words that in order to avail itself of the remedy provided for dissolution that such remedy is only available within the language and intent of the Statute. So that the law as laid down in the case of Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197 is still the law in Illinois. A corporation, such as this, a business corporation, is created by Statute. Its dissolution is also controlled by Statute. And unless one of the grounds set forth by the Statute is violated by the directors or those in control of the corporation,

a court of equity is without jurisdiction to step in. As was said in People ex rel. Barrett v. Shurtleff, 353 Ill. 248, at page 263: "Under our decisions and in consonance with the well settled rule recognized in other jurisdictions, courts of equity are without jurisdiction, in the absence of a statute conferring it, to dissolve a corporation or to wind up its affairs and sequestrate its property, or to appoint a receiver for the collection of its assets, the settlement of its business, the payment of its debts and the distribution of its property."

This interpretation of the law has been recognized in other cases. National Bureau of Property Administration, Inc. v. Tax Service Ass'n of Illinois, 290 Ill. App. 152, and Wiedoeft v. Frank Holton & Co., 294 Ill. App. 118. In the former case, the court there said: "It is well settled by a long line of decisions in this State that the courts of chancery have no general power to appoint receivers of corporations and can do so only when expressly authorized by statute, except at the instance of the attorney general. People v. Weigley, 155 Ill. 491; Blanchard Bro. & Lane v. Gay Co., 289 Ill. 413; Steenrod v. Gross Co., 334 Ill. 362; Nelson v. Toluca State Bank, 334 Ill. 83; People ex rel. Palmer v. Peoria Life Ins. Co., 357 Ill. 486."

The plaintiff cites the case of Tower Hill-Connellsville Coke Co. of West Virginia v. Piedmont Coal Co., 64 F.2d 817, in support of its contention that the court has the authority to dissolve the corporation. The defendants contend that that case is not in point. In that case there were interlocking directorates of two corporations. In that case there was open manipulation that dissipated the assets of the corporation. That case would have come under the Illinois Statute where the corporation may be dissolved upon showing that the acts of the directors or those in control were fraudulent, or that the corporate assets were being misapplied or wasted. This court can see no conflict in the decision of that case, and the law of Illinois as declared

253

in the Shurtleff and other cases. In that case, as in the Illinois cases, where there is a misapplication of the assets, fraudulent acts of the directors or those in control, or illegal acts, the court of equity may step in and provide a remedy. One of the contentions in the Tower-Hill case was that the corporation being a West Virginia corporation, the federal court was without jurisdiction to enter a decree, because of the West Virginia Statute. Under West Virginia law, not less than one-fifth in interest of the stockholders were required to ask to wind up the affairs of a corporation. The court in passing on this matter said: "This statute points a way in which a dissolution of a corporation may be brought about, but it does not provide that it may not be brought about in a proper proceeding in any other way. The remedy given by the statute is not an exclusive one and does not prevent a federal court of equity from entering a decree which, while it winds up the affairs of the company, does not specifically cancel the charter. The decree of the court is not in conflict with the provisions of the statute. If a state statute creates a substantive equitable right, a federal court of equity may enforce it." On that point this court can see no conflict with the law of Illinois.

As said before, sufficient grounds have been assigned by the plaintiff, if proven, to bring this matter within the jurisdiction of a court of equity. If the action of the directors or those in control have been either "illegal," "oppressive" or "fraudulent," then the court has jurisdiction. If the assets of the corporation are being or have been misapplied or wasted then the court has jurisdiction.

■ ■ The language of the statute is clear and unambiguous. If the directors or those in control acted illegally, that would be sufficient. If they acted oppressively, that would be sufficient. If they did any one of the acts charged, the court would have jurisdiction. The word "or" denotes one or the other of two or sev-

254

eral persons, things or situations and not a combination of them. In the case of People v. Vraniak, 5 Ill.2d 384, where the court was passing on the sufficiency of a criminal indictment, the court in construing the use of the word "or" in a provision of a statute said: "As used in its ordinary sense, the word 'or' marks an alternative indicating that the various members of the sentence which it connects are to be taken separately." In the case of Chicago Catholic Workers' Credit Union v. Rosenberg, 346 Ill. App. 153, that court in passing on the effect of the word "or" said: "As said in 50 Am. Jur., Statutes, sec. 281, 'If the disjunctive conjunction "or" is used, the various members of the sentence are to be taken separately.' "

In considering the charges as separate acts, there is nothing in the evidence or the exhibits that would sustain the charges of illegal acts on the part of the directors or those in control. The same is true as to the charge of fraud. If the charge of the plaintiff is to be sustained as to subsection (a)–(3) of Chapter 32, Section 157.86 it will have to be sustained on the charge of oppressive action on the part of C. Hayden Davis and those with him who controlled the corporation. "Oppressive" is defined by Webster's Dictionary as "unreasonably burdensome; unjustly severe. Tyrannical. Overpowering to spirit or senses." We do not find that the courts of Illinois have defined "oppressive," although certain acts have been defined in other jurisdictions as oppression or oppressive. An oppressive act has been held in the case of Gallegos v. Sandoval, 15 N. M. 216, 106 Pac. 373, 376, as "an act of cruelty, severity, unlawful exaction, domination, or excessive use of authority."

In the case of Eureka Building & Loan Ass'n v. Myers, 147 Kan. 609, 78 P.2d 68, 71, it was defined as follows: "Oppressive means harsh, rigorous or severe." The case of Storrow v. Texas Consol. Compress & Manufacturing Ass'n, 87 Fed. 612 (CCA 5th, 1898) is cited

by the plaintiff in support of its contention that the directors and those in control here acted "oppressively." In that case the association had earned sufficient net profits from the operation of its compresses to pay the 6 per cent dividend on its preferred stock, but had failed to do so. The court in that case does not attempt to define the acts of those in control of the corporation as oppressive but says that the bill and the matters presented in the complaint are such as warrant a hearing by a court of equity. We do not regard the facts in that case as analogous to those in this case, and there is no definition of "oppressive" acts as set forth in the plaintiff's brief.

In considering this cause this court is bound by the evidence and the record. An examination of the evidence relied upon to sustain the plaintiff's position, is therefore necessary to properly pass on the question involved. It is admitted that the hotel corporation has not paid a dividend since 1931. It must be admitted or at least it is evident that C. Hayden Davis and his associate shareholders, through their ownership of the 8000 shares of the common stock and some of the preferred stock of the hotel corporation, controlled for all practical purposes, the hotel corporation. As to the hotel operating corporation, the lessee, Mr. Davis and his associates were in absolute control. There is no evidence of misuse of funds of either the operating company or the hotel company. There is only conjectural evidence that the business was not operated properly, and that would have to be based solely upon the fact that the income from the operation of the hotel was not sufficient to show a profit. The operating statements introduced in evidence show that fact. The evidence on the part of the plaintiff that the hotel today is only worth $700,000 to $1,000,000 which is disputed by the defendants, is not such evidence that would conclusively or even impliedly show mismanagement, or misapplication of assets. It is

true that with an investment of only $40,000 the defendant C. Hayden Davis and his associates could control and direct the control of the hotel company, while those, who, with the plaintiff have an investment of about 16 times as much as Davis and associates, have no voice in the management of the corporation. This is an unfortunate situation for those who have such an investment. But the laws of the State of Illinois set up certain rules for the election of directors, and the operation of a business corporation. This court has no power nor has a court of equity the power to interfere, unless one or more of the acts set forth in the statutes for the dissolution of a business corporation is committed. This court in considering the evidence and the record cannot say that the acts of C. Hayden Davis and his associates in the operation of the hotel company have been "oppressive" so as to warrant a court of equity to intervene. It may well be, that the management was not good. It may also be that through the operation of the hotel by way of a lease to the hotel operating company, the officers of the operating company have been paid at the expense of the hotel company. But these matters have not been properly shown except by implication. And that implication is based upon the fact that the hotel has not made a profit. To hold otherwise on the state of facts here, would be to throw every business corporation operating under the laws of the State of Illinois open to attacks by stockholders who are dissatisfied because the corporation is not making money or even making enough money to satisfy those stockholders. In so holding, this court recognizes that in the cases where clear abuse of trust is shown, that courts of equity not only have the power but the duty to step in and grant relief to the stockholders. But, in order for the court to intervene, a violation of those grounds set forth in the Statute must be properly proved. In this case this was not done. Because of the foregoing conclusion, it

257

will be unnecessary to pass upon the question of estoppel raised by the defendants. The decree of the circuit court dismissing the cause for want of equity will be affirmed.

Affirmed.