(No. 65414.—

*In re* ESTATE OF LARRY COOPER, a Minor (Sisters of St. Mary, Appellant).

*Opinion filed December 6, 1988.*

STAMOS, J., took no part.

David M. Harris, of Greensfelder, Hemker, Wiese, Gale & Chappelow, P.C., of St. Louis, Missouri, for appellant.

Mitchell L. Hoffman, of Albert Brooks Friedman,

Ltd., of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

In August 1984, Larry Cooper, a minor, sustained injuries in a traffic accident. Larry Cooper's guardian, Mattie Cunningham, settled Cooper's personal injury claim arising out of the accident. The settlement agreement entered into with Allstate Insurance Company paid a lump sum to cover Cooper's attorney fees, and created a fund to provide for the balance of Cooper's claim through the use of an annuity. Allstate structured the annuity to pay Larry Cooper, or his estate if he does not survive, $46,758.91 in 1998, $99,915.57 in 2005, and $140,136.74 in 2010. A guardianship estate (the estate of Larry Cooper) was set up to facilitate approval of the settled cause of action. The circuit court of Cook County accepted the settlement agreement and authorized payment contingent upon the adjudication of hospital liens.

Cardinal Glennon Hospital of St. Louis, a nonprofit hospital operated by the Sisters of St. Mary, had treated Larry Cooper for his injuries. The trial court found that Cardinal Glennon had a valid lien of $57,252.26 against the estate of Larry Cooper to cover the costs of his treatment, but denied enforcement of the lien. The trial court ruled that enforcement was "premature in that there [were] no assets presently in the possession of the estate against which the lien [could] be enforced."

Cardinal Glennon appealed, and the appellate court affirmed the trial court's ruling. (156 Ill. App. 3d 270.) We granted Cardinal Glennon's leave to appeal. (107 Ill. 2d R. 315.) We disagree with the appellate court's reasoning and reverse.

The issue in this case involves the interpretation of section 1 of the Hospital Lien Act (Ill. Rev. Stat. 1987, ch. 82, par. 97). Section 1 allows every nonprofit or county operated hospital which treats an injured person

to place a lien upon the recovery that the injured person may receive from any personal injury suit. The amount of the lien is the "reasonable charges at ward rates," but may not exceed "one-third of the sum paid or due to said injured person." (Ill. Rev. Stat. 1987, ch. 82, par. 97.) The appellate court, relying upon *O'Donnell v. Sears, Roebuck & Co.* (1979), 71 Ill. App. 3d 1, interpreted the phrase "paid or due" to mean funds presently disbursed to the injured party. Consequently, the appellate court's ruling would preclude Cardinal Glennon from collecting any portion of its lien until 1998, when Larry Cooper receives his first payment from the annuity. Since the statute limits recovery to one-third of the amount paid or due, under the appellate court's construction of that phrase the hospital lien will not be satisfied until the year 2010.

By applying *O'Donnell v. Sears, Roebuck & Co.*, the appellate court looked to the only Illinois decision which applied the Hospital Lien Act to a structured settlement involving an annuity. In *O'Donnell*, plaintiff filed suit after a swimming pool accident rendered him quadriplegic. Oak Forest Hospital, operated by the Health and Hospitals Commission of Cook County, filed a hospital lien of approximately $11,000 against plaintiff's suit. Before trial, plaintiff settled the case in exchange for a lifetime annuity of $22,000 per year. The circuit court ordered plaintiff to pay only $500 of the hospital lien out of the first year's annuity payment, and continued adjudication of the balance for one year. The appellate court affirmed, holding that because the annuity was conditioned on plaintiff's life, and thus was not vested, no sums were either paid or due within the meaning of the Hospital Lien Act until plaintiff actually received annuity payments. *O'Donnell*, 71 Ill. App. 3d at 13.

We find *O'Donnell* unpersuasive in resolving the case before us. In *O'Donnell*, the court emphasized that the

annuity at issue would terminate upon the annuitant's death. Indeed, in the case at bar, counsel for Cardinal Glennon directs attention to this emphasis, and contends that had the annuity in *O'Donnell* been fully vested (*i.e.*, not conditioned upon the life of the annuitant), the *O'Donnell* court would have fully enforced the hospital lien. Cardinal Glennon argues that the decision in this case must therefore turn on whether the annuity is vested. We wish to point out that whether or not *O'Donnell* was correctly decided is not the question before us.

Distinctions based on vesting are inapposite, however, when dealing with how a hospital lien may attach to an annuity based on structured settlement. Initially, the only difference between an annuity for life and one guaranteed to return a specific sum over time is the cost of purchasing the annuity. The funds used to procure the structured settlement annuity, although not technically passing through the annuitant's hands, are, nevertheless, sums paid or due that person within the purview of the Hospital Lien Act. It is to these funds that the hospital lien attaches. Thus, the question of vesting is not a valid concern here. It makes no difference whether the funds are paid to the annuitant and he purchases the annuity, or whether the insurance company purchases the annuity for the annuitant; the result is the same. We cannot permit the Hospital Lien Act to be circumvented so easily.

What is of concern is the appropriate time for enforcement of a hospital lien. The trial court's deferred enforcement of Cardinal Glennon's lien ignores the purpose of the Hospital Lien Act. Statutory lien provisions such as the Hospital Lien Act are enacted to promote the health, safety, comfort, or well-being of the community. (See *Rockford Savings & Loan Association v. City of Rockford* (1933), 352 Ill. 348, 354.) Many of our sister States have similar hospital lien statutes which are designed to lessen the financial burden that hospitals face

in treating nonpaying accident victims. (Annot., 25 A.L.R.3d 858, 862 (1969).) In Illinois, the Hospital Lien Act allows hospitals to assist persons without regard to ability to pay, and as a result, to "enter into a creditor-debtor relationship without benefit of the opportunity usually afforded a creditor to ascertain the prospective debtor's ability to pay." (*Maynard v. Parker* (1979), 75 Ill. 2d 73, 75.) Thus, utilizing these liens to protect a hospital's interests promotes health care for the poor of this State.

Under the Hospital Lien Act, when a hospital attaches a lien upon an accident victim's recovery, it fashions for itself a type of property interest in any assets constituting the recovery, because a lien is a property interest. (See, *e.g., Armstrong v. United States* (1960), 364 U.S. 40, 4 L. Ed. 2d 1554, 80 S. Ct. 1563; *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 189.) The lien is a legal claim upon the property recovered as security for payment of the debt. (See 53 C.J.S. *Liens* §2a (1987).) Only when a recovery is made can the lien come into existence, because absent a provision to the contrary, a lien is created only when there is property on hand to which it may attach. (53 C.J.S. *Liens* §11b (1987).) Under the Hospital Lien Act, the lien is created only when the injured person has a "sum paid or due" him. (Ill. Rev. Stat. 1987, ch. 82, par. 97.) In the case of a compromise settlement, the lien attaches to "any money or property which may be recovered." (Ill. Rev. Stat. 1987, ch. 82, par. 98.) Therefore, in the case before us, Cardinal Glennon's lien attaches to any money or property paid or due the estate of Larry Cooper.

As the appellate court noted, the only asset in the estate is an annuity contract. (156 Ill. App. 3d at 273.) Nevertheless, as a debtor of Cardinal Glennon, the estate is obligated to pay for treatment rendered to Larry Cooper out of any available resources. (See *Maynard v.*

*Parker* (1979), 75 Ill. 2d 73, 75.) Furthermore, the lien may be presently enforced against the estate. To allow the settlement reached in this case to delay enforcement of the lien would frustrate the purpose of the Hospital Lien Act. Preventing a hospital from collecting the full amount of its lien until the year 2010 does not further the policy of treating those accident victims who are unable to pay. Accordingly, on remand, the trial court must enforce Cardinal Glennon's lien against the estate to the lesser of $57,252.26 or one-third of the present value of the annuity. This probably will entail liquidating the annuity, paying the hospital, and then purchasing another annuity with the balance.

Also, we note with interest that the attorneys for the estate did not get paid via an annuity, but rather received their fees immediately upon settlement. Although we recognize the value of the services these attorneys provided to the estate, we do not feel it proper that the structured settlement here should accommodate attorney fees while ignoring a valid hospital lien. Our ruling today should obviate this problem in future structured settlements.

Finally, although we believe that our decision in this case gives proper deference to a hospital's lien rights as mandated by the Hospital Lien Act, we feel that the time is ripe for the legislature to consider this problem. Given the rising popularity of structured settlements, especially in personal injury suits, the issue addressed in the case before us may very well repeat itself. Public policy favors the settlement of disputed claims. (See *Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 470; *McDole v. Kingsley* (1896), 163 Ill. 433, 436-37; *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 525.) Yet this policy can, as in this case, conflict with the Hospital Lien Act, which itself serves to promote health care for

the poor. The legislature should consider this conflict and the manner in which this opinion resolves it.

For the reasons stated above, we reverse the appellate and circuit courts and remand this case to the circuit court of Cook County.

*Appellate court reversed;*
*circuit court reversed,*
*cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.