FIRST DIVISION
April 14, 2008

Nos. 1-05-3620, 1-05-4083 (Cons.)

| | |
|---|---|
| ANTONIO GALVAN, Individually and on Behalf of All Others Similarly Situated, ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, ) | |
| v. ) | |
| ) | No. 05 CH 1800 |
| NORTHWESTERN MEMORIAL HOSPITAL, Individually and on Behalf of All Others Similarly Situated, ) | The Honorable Thomas P. Quinn, |
| Defendant-Appellee. ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The plaintiff, Antonio Galvan, brought a class action lawsuit against the defendant, Northwestern Memorial Hospital, and other similarly situated not-for-profit hospitals in Illinois to challenge their practices of charging uninsured patients more for services than they charged insured patients. Following a motion by the defendant, the trial court dismissed the plaintiff's complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)). The plaintiff appeals, arguing he sufficiently pleaded a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2004)) and for unjust enrichment.

BACKGROUND

On August 27, 2003, the plaintiff was involved in an automobile accident and suffered serious injuries.  He was taken to the emergency room at Northwestern where he underwent surgery.  The plaintiff remained at Northwestern for 15 days.  After he was released, Northwestern billed the plaintiff $87,033.99 for the health care services it provided.  At the time of his hospitalization, the plaintiff was uninsured.

In an action to recover for his injuries, the plaintiff was awarded $240,000 in a settlement agreement with the tortfeasor. Northwestern asserted a lien on the proceeds of the settlement in the amount of $87,033.99.

On January 27, 2005, the plaintiff, individually and on behalf of "all uninsured persons who were treated at or were admitted to Northwestern Memorial Hospital and similar not-for-profit hospitals throughout the state of Illinois from 2001 to the present and who have been billed list or gross hospital charges by Northwestern Memorial Hospital and similar not-for-profit hospitals," filed a two-count complaint against Northwestern "and similarly situated not-for-profit hospitals operating in the state of Illinois that have charged or are charging their uninsured patients gross or list hospital charges."  Count I alleged violations of the Consumer Fraud Act. Specifically, it alleged Northwestern's practice of billing uninsured patients gross or list hospital charges, which was more

than 50% what it charged insured patients, was unfair and deceptive. In count II, the plaintiff alleged Northwestern was unjustly enriched by its imposition of the lien on the plaintiff's settlement.

The Illinois Hospital Association, in its amicus brief, explained the federal government mandates, through Medicare regulations, all hospitals maintain a charge master list, which outlines customary charges for each of a hospital's services and supplies. The plaintiff alleged when Northwestern billed him for his health care expenses, he was billed based on this list. He maintains this violated the Consumer Fraud Act because insured patients are generally charged significantly lower rates for the same services. The Hospital Association explained that, in general, insured patients are billed less than the price set in the charge master list because their insurance companies have contracted with the hospital.

In May 2005, Northwestern moved to dismiss the plaintiff's complaint, arguing the plaintiff failed to state a claim upon which relief could be granted. On November 11, 2005, the trial court granted Northwestern's motion. The court held because the plaintiff was taken to Northwestern in an emergency, he could not allege any damages proximately caused by a deceptive act. Further, the plaintiff could not allege unfairness because Northwestern's policy did not violate public policy, the plaintiff was free to challenge the amount he was charged, and

the imposition of the lien was a benign act.  The court also held the plaintiff failed to state a claim for unjust enrichment because he did not pay any money to Northwestern and thus could not allege Northwestern retained a benefit to his detriment.

The November 11, 2005, order contained the wrong case number.  On December 12, 2005, the trial court granted the plaintiff's motion for the entry of an order bearing the correct case number.  This appeal followed.

### AMICI BRIEFS

The Service Employees International Union (SEIU) was granted leave to file an amicus brief in support of the plaintiff.  The Illinois Hospital Association submitted an amicus brief in support of Northwestern.  These briefs outline hospital billing procedures and policies and the effect of these policies on workers.  The amici briefs also disclose challenges to hospital billing practices raised in different lawsuits in Illinois and throughout the country.

### ANALYSIS

The plaintiff argues the trial court erred when it granted Northwestern's section 2-615 motion to dismiss because he sufficiently stated a cause of action for violations of the Consumer Fraud Act and unjust enrichment.  In the alternative, the plaintiff argues in his reply brief he should have been

Nos. 1-05-3620, 1-05-4083 (Cons.)

granted leave to amend his complaint.[1]   A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint.  735 ILCS 5/2-615 (West 2004); <u>First Midwest Bank, N.A. v. Stewart Title Guaranty Co.</u>, 218 Ill. 2d 326, 334, 843 N.E.2d 327 (2006).  In the context of a section 2-615 motion, "[t]he central inquiry is whether the allegations of the complaint, when considered in the light most favorable to the plaintiff, are sufficient to state a cause of action relief may be granted on."  <u>Hill v. PS Illinois Trust</u>, 368 Ill. App. 3d 310, 312, 856 N.E.2d 560 (2006).  A court should not dismiss a complaint on the pleadings "unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the plaintiff to recover."  <u>Bryson v. News America Publications, Inc.</u>, 174 Ill. 2d 77, 86-87, 672 N.E.2d 1207 (1996).  We review the trial court's dismissal of a complaint <u>de</u> <u>novo</u>.  <u>First Midwest Bank</u>, 218 Ill. 2d at 334.

In order to state a claim, a plaintiff must allege facts sufficient to bring a claim within a legally cognizable cause of action.  <u>City of Chicago v. Beretta U.S.A. Corp.</u>, 213 Ill. 2d

---

[1] There is no need to address this contention, as issues not raised in the main brief are waived.  See <u>Stephens v. Industrial Comm'n</u>, 284 Ill. App. 3d 269, 276 (1996) (argument raised for the first time in the reply brief in violation of Rule 341(g) (155 Ill. 2d R.341(g)) need not be addressed).

351, 368, 821 N.E.2d 1099 (2004). A court considering a motion to dismiss for failure to state a claim will "disregard the conclusions that are pleaded and look only to well-pleaded facts to determine whether they are sufficient to state a cause of action against the defendant." Beretta, 213 Ill. 2d at 368. If the facts are not sufficient, a court will grant a defendant's motion to dismiss. Beretta, 213 Ill. 2d at 368.

## A. Consumer Fraud Act

The plaintiff maintains he adequately pleaded Northwestern's practice of billing uninsured patients at its list or gross rate, which was more than 50% what it charged insured patients, was unfair and deceptive. "The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403, 416-17, 775 N.E.2d 951 (2002). The Consumer Fraud Act provides:

>          "Unfair methods of competition and
>      unfair or deceptive acts or practices,
>      including but not limited to the use or
>      employment of any deception, fraud, false
>      pretense, false promise, misrepresentation or
>      the concealment, suppression or omission of
>      any material fact, with intent that others
>      rely upon the concealment, suppression or

> omission of such material fact, *** in the
> conduct of any trade or commerce are hereby
> declared unlawful whether any person has in
> fact been misled, deceived or damaged
> thereby."  815 ILCS 505/2 (West 2004).

Thus, under the Act, a plaintiff must plead three elements: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the unfair or deceptive practice; and (3) the unfair or deceptive practice occurred in the course of conduct involving trade or commerce. Robinson, 201 Ill. 2d at 417.  In addition, "a valid claim must show that the consumer fraud proximately caused plaintiff's injury."  Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 501, 675 N.E.2d 584 (1996).

### 1. Unfairness

The plaintiff alleges Northwestern's practice of charging uninsured patients "artificially inflated" gross or list rates for services was unfair because if Northwestern collected the gross or list rates from uninsured patients, the hospital would receive an unconscionable 50% profit.  The plaintiff also argued it was unfair that Northwestern gave patients with insurance significant discounts that uninsured patients did not get. Northwestern argues the plaintiff's unfairness claim fails for three reasons: (1) the plaintiff did not plead actual profits; (2) Northwestern's practice of charging uninsured patients higher

prices, by itself, was insufficient to establish unfairness; and (3) Northwestern had legitimate reasons for charging uninsured patients more than it charges insured patients.

To the extent the plaintiff's unfairness claim is based on Northwestern making a substantial profit from uninsured patient care, the claim must fail because the plaintiff did not allege Northwestern actually profited from charging these rates, much less that it received an unconscionable profit. The plaintiff's complaint, instead, was couched in the language of potential profit:

> "19. According to a report published by the Service Employees International Union ('SEIU'), Illinois hospitals routinely charge the uninsured list or gross charges for medical services that are up to double the actual cost of providing health care and Northwestern charges the uninsured over double the net price that an insured patient would be charged.
>
> 20. The uninsured have become a profit center for Northwestern. According to the SEIU Hospital Accountability Project, Northwestern had a potential profit of 50% per uninsured discharge in 2001.
>
> * * *

28.     Northwestern and the Defendant
Class through their deceptive and unjust
assessment of the gross overcharges to the
uninsured reaps thousands of dollars each
year from the uninsured residing in Illinois,
including Plaintiff and the putative
plaintiff class, by willfully and
surreptitiously assessing their grossly
overstated list charges on the self-pay or
uninsured patients."  (Emphasis added.)

The plaintiff also argued the practice of charging uninsured patients rates of more than 50% of that charged to insured patients was unfair under the Consumer Fraud Act.  When measuring unfairness, courts consider three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers."  Robinson, 201 Ill. 2d at 417-18.  All three criteria do not need to be satisfied to support a finding of unfairness.  "'A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'"  Robinson, 201 Ill. 2d at 418, quoting Cheshire Mortgage Services, Inc. v. Montes, 223 Conn. 80, 106, 612 A.2d 1130, 1143-44 (1992).

Charging an unconscionably high price, by itself, is generally insufficient to establish a claim for unfairness.

**9**

Instead, the "defendant's conduct must [also] violate public policy, be so oppressive as to leave the consumer with little alternative except to submit to it, and injure the consumer." Robinson, 201 Ill. 2d at 418.

In this case, the plaintiff argues Northwestern's practice violates public policy because by charging the uninsured gross or list rates, knowing most of these patients cannot pay that amount, hospitals can justify collecting higher rates from private insurers and the government, and hospitals can exaggerate the value of the charity care they provide. The SEIU maintains this practice violates public policy because Northwestern and other not-for-profit hospitals are exempt from taxation based on being institutions of public charity. As such, the hospitals have a legal duty to provide free and reduced-price care to those unable to pay. Charging uninsured patients more than other patients offends this policy.[2]

The plaintiff maintains this practice is oppressive because, as an emergency room patient, he had no choice but to accept the medical services provided to him at the inflated rates. He points out he was taken to Northwestern's emergency room

---

[2] The plaintiff did not raise the charity-care argument in his complaint or his brief. The plaintiff never alleged he was unable to pay for his services or he was entitled to charity care.

following an automobile accident, he needed immediate medical attention, and he had no meaningful choice as to which hospital he was taken to. He argues he was harmed by Northwestern's collection efforts, which included a lien on one-third of his settlement funds.

The plaintiff points to an order by Circuit Court Judge Stuart A. Nudelman, denying Our Lady of the Resurrection Medical Center's motion to dismiss a similar claim in Servedio v. Our Lady of the Resurrection Medical Center, No. 04L3381 (Cir. Ct. Cook Co., January 6, 2006). In that case, the plaintiffs sued Resurrection for violations of the Consumer Fraud Act, breach of contract, violations of the Illinois revenue code, and unconscionable conduct. The plaintiffs were all uninsured patients who presented at the emergency room at Resurrection. After services were rendered, none of the plaintiffs were able to pay their hospital bills. To collect for its services, Resurrection sued Servedio and sent collection notices to the other plaintiffs. The plaintiffs then sued Resurrection.

According to the trial court's order, the plaintiffs specifically alleged the rates Resurrection charged to insured patients were the de facto rates for services and uninsured patients were charged rates significantly higher than those de facto rates. In fact, the plaintiffs alleged they were charged double and triple the amounts charged to insured patients. The plaintiffs argued this practice was unfair under

**11**

the Consumer Fraud Act because it violated Illinois' public policy that hospitals should provide health care to low income individuals, it was oppressive because the plaintiffs were in a position in which they had no reasonable alternative but to accept medical services and agree to pay, and it was injurious because if the plaintiffs and other low income uninsured patients were charged exorbitantly high fees for medical services, they would likely forgo medical attention when it was needed. Based on these allegations, the trial court found the plaintiffs sufficiently pleaded a cause of action under the Consumer Fraud Act. See also Cristiani v. Advocate Health Systems Care Network, Inc., No. 03L14635 (Cir. Ct. Cook Co., January 27, 2006) (in a similar motion to dismiss, Circuit Court Judge Barbara J. Disko denied Advocate's motion to dismiss a claim under the Consumer Fraud Act, finding a 50% cost reduction for uninsured patients "could constitute a violation of the Consumer Fraud Act"); but compare with Schmitt v. St. Elizabeth's Hospital Sisters of the Third Order of St. Francis, No. 05L0186 (Cir. Ct. St. Clair Co., December 16, 2005) (similar complaint dismissed because "Plaintiff has failed to allege that he has paid any amount to St. Elizabeth's, or even offered to pay any amount, or that St. Elizabeth's has undertaken any collection activities against him, he has no actual damages, and thus cannot state a claim under the [Consumer Fraud Act]").

Northwestern maintains the only "clear-cut" circumstance in

which a high price would violate the Consumer Fraud Act is where the seller violates public policy by giving little or no services for the price paid. Northwestern cites two cases as authority: People ex rel. Hartigan v. Knecht Services, Inc., 216 Ill. App. 3d 843, 854-56, 575 N.E.2d 1378 (1991) (explaining high prices alone are generally insufficient to establish unfairness under the Consumer Fraud Act, a party must also show the practice violates public policy, is immoral, unethical, or oppressive, and harms consumers); People ex rel. Fahner v. Hedrich, 108 Ill. App. 3d 83, 90, 438 N.E.2d 924 (1982) (practice of charging a $1,500 sales commission when there was little or no service in connection with the sale was unfair under the Consumer Fraud Act because it violated public policy, the consumers were in a position in which they had no reasonable alternative but to pay, and consumers were injured where they were forced to pay a $1,500 fee for little or no services). In this case, because the plaintiff received numerous medical procedures and therapies during his 15-day stay at Northwestern, he could not allege unfairness based on high prices.

Northwestern also argues it has a legitimate reason for charging uninsured patients more than it charges insured patients. Specifically, with insured patients, Northwestern knows it will be paid promptly for the services it provided; thus, it has assurance it will be paid. Further, by contracting with insurance companies for discounted rates, Northwestern can

Nos. 1-05-3620, 1-05-4083 (Cons.)

legitimately expect insured members to use its services. In support of this argument, Northwestern cites Laughlin v. Evanston Hospital, 133 Ill. 2d 374, 550 N.E.2d 986 (1990), for the proposition that our supreme court has rejected the claim that volume discounts given by health care providers to other parties are unfair to those who do not receive such discounts.

In Laughlin, the plaintiffs were third-party payors who indemnified or insured patients for the cost of hospital services. Every plaintiff was charged the same amount for services provided by the defendant hospitals. However, one payor, Illinois Blue Cross Plan, had a contract with the hospitals whereby any amount that Blue Cross paid that exceeded 105% of a hospital's actual cost would be returned to Blue Cross at the end of the year. In 1982, that amount was $50 million. Laughlin, 133 Ill. 2d at 376-77.

The plaintiffs sued these hospitals for violations of the Antitrust Act (740 ILCS 10/1 et seq. (West 2004)) and the Consumer Fraud Act. The hospitals moved to dismiss the complaint. The court dismissed the Antitrust Act count, holding: "Price discrimination of the character complained of by the plaintiffs, that is, discrimination which is not predatory, which is not the result of a concerted refusal to deal or a conspiracy and the basis of which is simply that the plaintiff did not obtain services at a lesser price bargained for by a competing buyer, is, in and of itself, not sufficient to state a cause of

**14**

action under [the Antitrust Act]." Laughlin, 133 Ill. 2d at 388.

Concerning the unfairness claim under the Consumer Fraud Act, the court held the reach of the Consumer Fraud Act is "limited to conduct that defrauds or deceives consumers or others." Laughlin, 133 Ill. 2d at 390. Further, the court held, "To construe the Consumer Fraud Act to give a cause of action for discriminatory pricing that the legislature refused to give under the Antitrust Act would be incongruous." Laughlin, 133 Ill. 2d at 391.

While the holding in Laughlin is informative, the plaintiff raises public policy arguments and allegations of oppressiveness that were not relevant in that case. Northwestern argues the public policy favoring charity care is not relevant in this case (nor was it raised by the plaintiff) because the plaintiff made no allegations he qualified for charity care. Further, Northwestern argues the plaintiff's oppressiveness argument is unpersuasive because the plaintiff did not and cannot allege he was required to pay anything as a condition of Northwestern treating him. Further, the lien imposed in the settlement agreement was not oppressive where Northwestern performed services and the plaintiff failed to pay for those services.

The plaintiff's claim of unfairness is founded on the oppressiveness of the medical charges by Northwestern and his lack of meaningful choice "but to pay [Northwestern]'s exorbitant rates." The plaintiff cites Central Standard Life Insurance Co.

**15**

v. Davis, 10 Ill. App. 2d 245, 255, 134 N.E.2d 653 (1956) for the definition of oppressive as "unjustly severe" or "unreasonably burdensome." We are unpersuaded that either describes Northwestern's billing practices here.

Underlying the plaintiff's claim that charging uninsured patients a higher price amounts to oppressive pricing is a suggestion that the insured and uninsured patients are similarly situated. They are not. The plaintiff ignores the obvious difference between an insured patient and one uninsured. An insured patient by definition has medical insurance either paid by him directly or by his employer as a benefit. In return for the insurance premiums, his insurance company contracts with a hospital for medical services at a reduced rate. The contract benefits the hospital because payment is guaranteed. There is no such guarantee from uninsured patients. The reality is an insured patient comes into the hospital with expenses already incurred for medical coverage. That his insurance company has been able to negotiate a reduced rate for medical services from the hospital is simply a product of doing business. There is no suggestion the billing contract negotiated between Northwestern and a particular insurance company is negotiated at anything other than at arm's length. That an uninsured patient is charged a higher rate for medical services is the flip side of the revenue-stream coin. Those that have incurred the expense of medical insurance guaranteeing payment to a medical services

**16**

provider receive reduced billing rates; those that have incurred no expense to guarantee payment to a medical services provider must bear the full cost for those services. While the plaintiff contends the rate he was charged was "exorbitant" and unrelated to the actual costs of the providing the medical services received, as a court of law we find no basis to address such arguments for "unfairness" as it would require we examine the billing practices in their entirety for both insured and uninsured patients, for each is a part of the revenue stream; we cannot ignore one and examine only the other. As the amicus Illinois Hospital Association correctly contends, the contentions of the plaintiff should be directed to the deliberative process of the legislature.

We agree with the trial court; the plaintiff has failed to make out a case for unfairness in Northwestern's billing practices.

## 2. Deception

The plaintiff also argues his complaint adequately set out a deception claim under the Consumer Fraud Act because Northwestern concealed material facts from him and other uninsured patients. Specifically, the plaintiff argues Northwestern failed to disclose it charged uninsured patients at least double what it charged insured patients. The trial court held because of the emergency nature of the plaintiff's admission to Northwestern, he could not allege any damages proximately caused by the

**17**

concealment or omission of any facts.

As outlined above, to state a cause of action under the Act, a plaintiff must plead four elements: (1) a deceptive act or practice by the defendant; (2) an intent by the defendant that the plaintiff rely on the practice; (3) the deceptive practice occurred in the course of conduct involving trade or commerce; and (4) the practice proximately caused the plaintiff's injury. Robinson, 201 Ill. 2d at 417; Connick, 174 Ill. 2d at 501.

An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. 815 ILCS 505/2 (West 2004); Connick, 174 Ill. 2d at 504. "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." Connick, 174 Ill. 2d at 505. Concealment is only actionable where it is employed as a device to mislead. Pappas v. Pella Corp., 363 Ill. App. 3d 795, 799, 844 N.E.2d 995 (2006).

In a cause of action for fraudulent misrepresentation, a plaintiff must plead he was actually deceived by the misrepresentation in order to establish proximate causation. Pappas, 363 Ill. App. 3d at 804. In other words, under the Consumer Fraud Act, deceptive advertising could not be the proximate cause of the plaintiff's damages unless the plaintiff was deceived by the advertising. Pappas, 363 Ill. App. 3d at

**18**

804. However, in a case where the plaintiff alleges consumer fraud based on concealment of facts, a plaintiff need only allege he relied on the defendant's concealment by silence. "Requiring anything more would eviscerate the spirit and purpose of the Consumer Fraud Act." Pappas, 363 Ill. App. 3d at 805. In Pappas, the plaintiff alleged the defendant, even though it was aware of a material defect in a product, never notified its customers that the product was defective. The court held the plaintiff, in effect, alleged he relied on the plaintiff's silence, which was sufficient to plead proximate cause. Pappas, 363 Ill. App. 3d at 805.

In this case, the plaintiff pleaded:

> "15. Northwestern and the Defendant Class do not disclose the disparate cost treatment to the uninsured in any of its promotional materials while touting its provision of services to charities and the poor.

> * * *

> 27. There is no meaningful disclosure of these discrepancies in charges to the uninsured. Northwestern and the Defendant Class are instead deceptively and unlawfully embedding these gross charges set forth in the billing statement sent to the uninsured

**19**

in a manner that was deliberately calculated by Northwestern and the Defendant Class to conceal its gross overcharges from the uninsured.

28.  Northwestern and the Defendant Class through their deceptive and unjust assessment of the gross overcharges to the uninsured reaps thousands of dollars each year from the uninsured residing in Illinois, including Plaintiff and the putative plaintiff class, by willfully and surreptitiously assessing their grossly overstated list charges on the self-pay or uninsured patients.

* * *

35.  The uninsured have little choice as to which hospital they enter, particularly in an emergency.  They cannot 'shop around' for the best prices.  In Cook County in 2001, the emergency room was the referral source for a higher proportion of self-pay patients (67%) than for patients with health insurance (45%).  A higher proportion of self-pay patient admissions (69%) were deemed to be emergencies than were insured patient

admissions (50%).  See the Hospital Accountability Project of the Service Employees Union report entitled: Why the Working Poor Pay More: A Report on Discriminatory Pricing of Health Care.

* * *

62.  Defendant's actions as alleged herein are unfair and deceptive, and constitute fraud, misrepresentation and the concealment, suppression and omission of material facts with the intent that Plaintiff and the Plaintiff Class would rely upon the fraudulent misrepresentation, concealment, suppression and omission of such material facts, all in violation of the Illinois Consumer Fraud Act.

63.  By reason of the premises, and as a proximate cause thereof, Plaintiff and the Plaintiff Class have been injured and are thus entitled to damages from Northwestern, for its own fraudulent billing practices and for its conduct with respect to the uninsured, and all other relief prayed for in this Class Action Complaint."

The plaintiff adequately pleaded that Northwestern concealed

information about its rates and billing practice from him. However, he did not plead that he suffered any damages from the concealment, or that any alleged damages were proximately caused by the concealment. As Northwestern points out, the plaintiff never alleged he would have been charged a different rate had he been "informed of the existence of discounted rates for certain insured patients" or he would have sought care elsewhere if Northwestern had disclosed this information to him. In fact, he pleaded the existence of the practice at Northwestern and other not-for-profit hospitals of charging uninsured patients more. Further, the plaintiff never paid anything for the medical services he received, nor did he plead Northwestern instituted any collection action other than asserting a lien on his settlement agreement. Finally, because the plaintiff was taken to Northwestern in an emergency situation so that care would have been provided before any discussions of rates or payments were had, the plaintiff makes no claim of reliance on Northwestern's rates and billing practice for the medical services he received.

The trial court properly dismissed count I of the plaintiff's complaint.

## II. Unjust Enrichment

In count II of his complaint, the plaintiff alleged Northwestern was unjustly enriched when it asserted a lien against the plaintiff's personal injury settlement. Although the trial court found the plaintiff suffered a detriment, it

**22**

dismissed this count, holding the plaintiff never pleaded that Northwestern retained a benefit.

To state a cause of action for unjust enrichment, a plaintiff must allege the defendant unjustly retained a benefit to the plaintiff's detriment, and the defendant's retention violated the fundamental principles of justice, equity, and good conscience. HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc., 131 Ill. 2d 145, 160, 545 N.E.2d 672 (1989).

The plaintiff argues Northwestern's lien on his settlement award was a property interest and, thus, Northwestern retained a benefit. Northwestern argues the lien was unadjudicated and so long as it remains unadjudicated, it has retained no benefit.

Section 10 of the Health Care Services Lien Act (Lien Act) (770 ILCS 23/10(a) (West 2004)), provides:

> "Every health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person *** shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges ***."

Once a health care provider asserts a lien, a trial court will adjudicate the rights of the interested parties and enforce the lien after petitioned by either the injured party or the health

Nos. 1-05-3620, 1-05-4083 (Cons.)

care provider.  770 ILCS 23/30 (West 2004).

A lien is a "legal claim upon the property recovered as security for payment of [a] debt."  In re Estate of Cooper, 125 Ill. 2d 363, 369, 532 N.E.2d 236 (1988).  In other words, "when a hospital attaches a lien upon an accident victim's recovery, it fashions for itself a type of property interest in any assets constituting the recovery, because a lien is a property interest."  Memedovic v. Chicago Transit Authority, 214 Ill. App. 3d 957, 959, 574 N.E.2d 726 (1991).  A lien can come into existence only when a recovery is made, because absent a provision to the contrary, a lien is created only when there is property to which it may attach.  Cooper, 125 Ill. 2d at 369. "Under the Hospital Lien Act, the lien is created only when the injured person has a 'sum paid or due' him. [Citation.] In the case of a compromise settlement, the lien attaches to 'any money or property which may be recovered.' [Citation.]"  Cooper, 125 Ill. 2d at 369.[3]  Cooper and Memedovic establish a lien is a type of property interest, but until a trial court adjudicates the rights of the parties and enforces the lien, the health care provider, in this case Northwestern, has retained no benefit.

The trial court, therefore, properly dismissed Count II as well.

_____

[3] The Hospital Lien Act was repealed and replaced by the Lien Act in 2003.

**24**

Nos. 1-05-3620, 1-05-4083 (Cons.)

CONCLUSION

For the reasons stated above, the decision of the circuit court of Cook County is affirmed.

Affirmed.

WOLFSON, J., concurs.

JUSTICE ROBERT E. GORDON, specially concurring:

I agree with the majority that the trial court properly dismissed plaintiff's complaint with prejudice pursuant to section 2-615 of the Code of Civil Procedure (CODE) 735 ILCS 5/2-615 (West 2004).

In order for a hospital to collect a bill for services rendered they must show that the bill is the fair, usual and customary charge for the services received at area hospitals at the time of the charge. Victory Memorial Hospital vs. Rice, 143 Ill. App. 3d 621 (1986). In re the Estate of Ahbergo v. Hull, et al., 275 Ill. App. 3d 439 (1995). Therefore, a trial court will adjudicate a hospital lien on the same basis. 770 ILCS 23/30 (West 2004). The amicus brief filed by the Service Employees International Union (SEIU) outlines hospital billing procedures and policies. The Illinois Hospital Association, in its amicus brief, explains how all hospitals maintain a master charge list outlining the customary charge for each hospital charge based on what other hospitals in the area are charging for each service they provide. Plaintiff admits he was billed for his health care expense based on this list. If a hospital individually enters in

**25**

Nos. 1-05-3620, 1-05-4083 (Cons.)

a contract with a health care insurance company to bill their insured at a reduced rate, there is nothing in the law that prohibits that conduct under the theory that it violates the Illinois Consumer Fraud and Deception Business Provision Act or under the theory for unjust enrichment as noted by the majority in their opinion.

Nos. 1-05-3620, 1-05-4083 (Cons.)

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

ANTONIO GALVAN, Individually and on
Behalf of All Others Similarly Situated,
    Plaintiff-Appellant,
                        v.
NORTHWESTERN MEMORIAL HOSPITAL,
Individually and on Behalf of All
Others Similarly Situated,
    Defendant-Appellee.

**Nos. 1-05-3620, 1-05-4083 (Cons.)**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: April 14, 2008**

**JUSTICE GARCIA delivered the opinion of the court.**
**Wolfson and R. Gordon, JJ., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Thomas P. Quinn, Judge Presiding**

For DEFENDANT -             George F. Galland, Jr.
APPELLEE                    Miner, Barnhill & Galland, P.C.
                            14 W. Erie Street
                            Chicago, IL 60610

                            David S. Rosenbloom
                            McDermott, Will & Emery
                            227 W. Monroe Street
                            Chicago, IL 60606

For PLAINTIFF -             Marvin A. Miller, Dom J. Rizzi, Lori A. Fanning
APPELLANT                   Miller, Faucher and Cafferty, LLP

**30 N. LaSalle Street, Suite 3200**
**Chicago, IL 60602**


**Dominic Fichera**
**Fichera & Miller**
**415 North LaSalle Street, Third Floor**
**Chicago, IL 60610**


| | |
|---|---|
| AMICUS CURIAE BRIEF OF THE ILLINOIS HOSPITAL ASSOCIATION | Kathleen T. Pankau, Thaddeus J. Nodzenski Illinois Hospital Association 1151 East Warrenville Road P.O. Box 3015 Naperville, IL 60566 |
| AMICUS CURIAE BRIEF OF THE SERVICE EMPLOYEES INTERNATIONAL UNION | Craig Becker Service Employees International Union 25 East Washington Street Suite 1400 Chicago, IL 60602 |